HURD BY NEXT FRIEND, DAVIS *v.* BALL ET AL.

[No. 18,846. Filed June 19, 1957. Rehearing denied September 9, 1957. Transfer denied March 3, 1958.]

*Joseph B. Davis, David W. Jones,* both of Muncie, and *Charles B. Salyer,* of Anderson, for appellant.

*Warner, Clark & Warner, Bracken, Gray, DeFur & Voran* and *Marshall E. Hanley,* all of Muncie, for appellees.

KELLEY, J.—Appellant, Robert Carlton Hurd, instituted this action by complaint for specific performance of an oral contract allegedly entered into between his mother and the decedent, E. Arthur Ball. The appellees consist of the widow, the legitimate children of decedent and the spouses of those that are married, and the executors of and trustees under the last will and testament of decedent. The third amended second paragraph of complaint is the only part of the complaint here involved, and it will be herein referred to as the complaint.

In material and pertinent substance, the complaint alleged that said appellant was born out of wedlock about the month of July, 1940 to Virginia Hurd and that decedent was his father; that decedent recognized appellant as his child; that at the time of appellant's birth,

> "his mother and his said father entered into a contract and agreement wherein his said mother promised and agreed that she would not file any suit or bring any legal action against his said father for petitioner's (appellant's) support and maintenance; that his said father, E. Arthur Ball, in consideration of said promise and as an inducement to petitioner's mother to make said promise, contract and agreement not to file any suit or suits against his said father, promised and agreed with his said mother that he, his said father, would well and properly support and maintain petitioner throughout his infant life and as a further consideration of his mother's promising and agreeing not to bring any such actions against his said father he promised and agreed with his said mother that he would make and duly execute his will wherein he would make a provision that petitioner would be a beneficiary therein and would be named as such and be entitled thereby to a share of his estate as such beneficiary equally with his father's other children and so that petitioner should and would benefit from his said estate in equal shares with any other children of his said father."

That appellant's mother "carried out and performed all of the provisions of said contract and agreement on her part to be performed and in consideration of his said promises and agreement did not bring any action against petitioner's father for his support and maintenance"; that decedent failed to perform the conditions of the contract and agreement on his part to be performed; that decedent did support and maintain appellant until he was five (5) years of age; that decedent failed to make a specific bequest to appellant in his last will and testament giving and bequeathing to appellant an equal share with his other children of his property, as he had agreed with appellant's mother. The prayer is that the executors, trustees, beneficiaries and heirs of decedent be required to specifically perform the conditions of decedent's said contract and agreement.

To the complaint the appellees answered: (1) in admission and denial; (2) that the declared upon agreement could not be performed within one year from the making thereof and is unenforceable under clause 5 of the Statute of Frauds (§33-101, Burns' 1949 Replacement) ; (3) that decedent's residuary estate consisted of both real and personal property and, therefore, the agreement is unenforceable under clause 4 of the Statute of Frauds (§33-101, Burns' 1949 Replacement) ; (4) that one-fourth of the personal property of decedent's estate exceeds $500.00 in value and, therefore, the oral contract alleged upon is within the meaning of Section 4 of the Indiana Uniform Sales Act (§33-105, Burns' 1949 Replacement) ; (5) that at the time of appellant's birth, and for more than 18 months prior thereto, his mother was the wife of Ralph Hurd and "resided" with him. Appellant replied to the several answers of the several appellees, in substance, (1) a denial and admission under the rules; (2) that the

agreement was not within the Statute of Frauds or the meaning of the Uniform Sales Act and is enforceable; (3) that appellees are estopped from asserting that the contract is unenforceable by reason of the Statute of Frauds or the Uniform Sales Act because his mother fully performed her part of the agreement and the decedent reaped and accepted all the benefits due him under the terms of the agreement; (4) that his mother and Ralph Hurd were not living together and having relations as husband and wife during the period in which appellant was conceived; (5) that decedent made "further oral arrangements" with persons known to him concerning his oral acknowledgment that he was the father of appellant and "contributed money to such persons."

The record discloses that a pre-trial conference was fixed for April 5, 1955 and that on that date the appellees presented a motion that "before the introduction of any evidence by the plaintiff, the defendants be first permitted to introduce evidence on the size and character" of the estate of decedent and "any other relevant evidence pertaining to the affirmative defense of the statute of frauds, for the reason that if said affirmative defense is proved, the plaintiff's action cannot be maintained." The appellant then filed his motion that the cause be tried by jury. On April 20, 1955, the court ruled that "There shall first be submitted to the Court for trial the one single issue as to the nature, character and value of the estate" of decedent "and for the purpose of trying that issue the request of petitioner for a jury trial is denied and said issue will be tried by the Court. Upon determination of that issue such further provisions and direction for the method of trial of all remaining issues will be made by the Court as may at the time be found necessary and proper." May 20,

1955 was then set by the court for the trial of "such single issue."

Prior to the introduction by appellees of evidence on said May 20, 1955, appellant objected to the trial on appellees' motion because it denied appellant's constitutional right to trial by a jury upon all the issues; that it was improper for the court to hear the case in piece meal; that appellant was entitled to have his complaint heard in full before the court and jury before the appellees present any evidence; that appellant would be prevented from presenting his evidence to controvert appellees' position and thereby deprive him of a legal trial. This objection was overruled. The appellees thereupon introduced evidence as to the real and personal property in decedent's estate and the valuation thereof; as well as the probated will of decedent. Appellees' objection to appellant's offer in evidence of the complaint, and his replies to appellees' answers, was sustained.

At the conclusion of their evidence, as aforesaid, appellees moved the court to enter finding for them and to enter judgment thereon. Thereafter, the court found for the appellees and that "the property of said estate, affected by the oral contract sought to be enforced herein, consists of real estate and of personal property of a value in excess of $500.00." The court then adjudged that appellees' motion be sustained, that appellant take nothing by his complaint, and that appellees recover their costs.

The action brought by appellant is grounded in equity. It seeks the grant of the exercise of the equitable powers of the court. The complaint involved matters of exclusive equitable jurisdiction. There is no right to a jury trial in actions for specific performance, although it appears that the court may direct an issue to the jury. 35 C. J.,

Juries, §47, page 173; 50 C. J. S., Juries, §36, page 753. *Peden* v. *Cavins et al.* (1892), 134 Ind. 494, 34 N. E. 7.

Appellant's request for a jury trial was not confined to any particular legal issues raised by the answers and replies thereto but was that "this cause be tried by jury." It is provided by statute (§2-1204, Burns' 1946 Replacement) that "Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court." ". . . a demand for a jury should only include a demand for the trial of such issues as are triable by a jury, and when several issues are joined in a cause, some triable by jury and some by the court, and a demand for a jury to try all of the issues is made, it is not error to refuse it." *Peden* v. *Cavins et al., supra,* pages 501, 502.

It is apparent upon the record that appellant's complaint stated facts showing a contract not in writing and of such nature that it involved the Statute of Frauds. The complaint, however, did not allege any facts as to the kind, nature and value of the property in decedent's estate or that was bequeathed and devised by his will. The court, as a furtherance of the pre-trial conference, determined to hear evidence as to the nature and value of such property devised and bequeathed by decedent's will for the purpose, as readily appears from the record, of determining the presented legal question as to the application of the Statute of Frauds. It must be patent that if, in the opinion of the court, the complaint, supplemented by the evidence as to the nature and value of the involved property, stated no facts entitling appellant to the relief demanded by him, it would be useless to prolong the litigation and consume the time of the court and the litigants in a trial destined to result in a

finding adverse to appellant. The proceeding being in equity, we can see no harm to appellant in the action of the court. The immediate question is whether the court was in error in first hearing evidence, out of usual order, as to the nature and value of the property in decedent's estate. We do not think it was an abuse of the discretion of the court. "While the right to open and close is an important right, and according to the holding of some cases the denial thereof in a jury case constitutes reversible error, the prevailing view is that the right to open and close is a mere question of trial practice, and that a ruling of the trial court refusing to accord the right is not a proper subject for an exception, or, as some courts put it, there will be no interference by an appellate court unless there is an abuse of discretion." 53 Am. Jur., *Trial,* §72, page 73.

We come then to the vital question in the case which is, does the complaint make a case for a specific performance of the alleged parol contract of decedent to make a will with a provision therein naming appellant as a beneficiary thereof in equal share with decedent's legitimate children?

The contract, as alleged, appears to be one not in writing entered into by two persons for the benefit of a third, namely: the appellant. It may be noticed that the oral contract alleged upon is not one merely to make a will. It has been held that such a contract ordinarily is not within the Statute of Frauds. See: Henry's Probate Law and Practice, Vol. 2, §18, page 1040, note 5. The agreement alleged in the complaint appears to have been orally made by decedent, upon the consideration alleged, for a bequest and devise to appellant of a share of decedent's property equal with that provided for his legitimate children. It would seem that such a contract has been held to be within the inhibition of

the Statute of Frauds. *Wallace, Administrator* v. *Long, Guardian* (1885), 105 Ind. 522, 5 N. E. 666.

Insofar as the complaint counts upon the failure of decedent to "support and maintain petitioner (appellant) throughout his infant life," it was held in *Goodrich, Administrator* v. *Johnson, by her next Friends* (1879), 66 Ind. 258, that an oral agreement of similar content was one that by its terms was not to be performed within one year and that it was unenforceable, being within the Statute of Frauds (§33-101, clause Fifth, Burns' 1949 Replacement). It is observed that in the Goodrich case, last cited, the agreement was for support and maintenance of the illegitimate child "during and until she was twenty-one years af age," whereas the agreement here involved was for support and maintenance of appellant "throughout his infant life." An infant in its legal signification embraces any person who has not attained or arrived at the age of majority, which, in this state, is fixed at the age of twenty-one years. Burns' 1946 Replacement, §2-4701, clause (Sixth). Therefore, the "infant life" of appellant, in legal acceptation, would extend to his age of twenty-one (21) years. Thus, said agreement here involved, as to the support and maintenance of appellant, is, under the holding of the said Goodrich case, unenforceable as within the aforesaid clause Fifth of the Statute of Frauds. In this respect, our Supreme Court does not appear to adhere to the majority rule in the United States (See: 49 A. L. R. 2d 1293, §2). It appears, also, that the holding in the Goodrich case is in opposition to that found in *Wiggins, Administrator* v. *Keizer and Wife* (1855), 6 Ind. 252, 254. As we are bound by the ruling precedents of the Supreme Court, we must indulge the premise that the Goodrich case impliedly overruled the

Wiggins case, since the former was decided in 1879 and the latter in 1855.

Returning to that part of the agreement pertaining to the promise of decedent to make a bequest and devise to appellant, the appellant does not appear to seriously contest the asserted proposition that the oral contract, as alleged, is within the Statutes of Frauds. In his original brief appellant says that "Whether or not the contract and agreement made between appellant's mother and father falls within the Statute of Frauds" "makes no difference in this case" and, in his reply brief, he says that "said oral contract might in the first instance be within the Statute of Frauds." The foregoing assertions are predicated upon appellant's contention that his mother "performed every condition of said contract and agreement on her part to be performed. She left nothing undone. When the two year Statute of Limitations run against her, she had fully and completely performed her part of said contract and agreement." That the decedent "received and reaped the benefits due him under the terms of said contract in full. After the two year period had closed, he had received everything he could possibly receive . . . under the terms of the contract."

The procedure adopted by the court in this case requires us, we think, to consider the questions proposed as if raised by a sustained demurrer to the complaint containing a memorandum based on the several Statutes of Fraud. Demurrers to such complaints are proper. *Fall* v. *Hazelrigg* (1874), 45 Ind. 576, 580; *Kavanaugh* v. *England* (1953), 232 Ind. 54, 58, point 2, 110 N. E. 2d 329. For such purpose, all well pleaded facts of the complaint and all reasonable inferences therefrom are deemed admitted; and all facts will be deemed stated that can be implied from the allegations made by a fair and rea-

sonable intendment. *Walker* v. *Ellis* (1955), 126 Ind. App. 353, 129 N. E. 2d 65, points 1, 2.

If the verbal agreement relative to the promise to bequeath and devise by will, as alleged in the complaint, be forbidden by the Statute of Frauds, it cannot be specifically enforced. *Wallace, Administrator* v. *Long, supra,* on page 531. Since it could have been performed within one year from the making thereof, it seems not to be within the provisions of clause 5 of the Statute, Burns' 1949 Replacement, §33-101. *Frost* v. *Tarr* (1876), 53 Ind. 390.

The agreement was not for the bequest or devise of any certain or specific land or personalty, but the evidence submitted upon the order of the court showed that the contract affected both real estate and personal property of decedent's estate in excess of $500.00 in value. The same situation existed according to the complaint considered in the above cited Wallace case. The contract alleged upon in that complaint was that the decedents would will, bequeath and give the claimant their "entire estate." No specific property, either real or personal, was agreed to be bequeathed or devised. The evidence, however, established the value of the real and personal estate left by the decedent. The court held that the agreement "involved an agreement for the sale of real estate, and for the transfer of personal property exceeding in value $50.00." See, also, *Frost* v. *Tarr, supra,* where the agreement was to bequeath appellee a share of decedent's estate, equal in value to any share received by his children, although, other than that clause requiring contracts not to be performed within a year to be in writing, the court seems not to have considered any provision of the Statute of Frauds being involved.

"Contracts to devise real estate by will, since they contemplate a transfer of real estate for a considera-

tion, are also within the Statute." Williston on Contracts, Revised Edition, Vol. Two, §488, page 1404, note 11. (Relating to our Statute, clause 4, §33-101, Burns' 1949 Replacement.) A contract to bequeath personal property is within the provisions of the Uniform Sales Act (§33-105, Burns' 1949 Replacement). Williston on Contracts, Revised Edition, Vol. Two, §507, page 1479, note 6, citing *Wallace* v. *Long, supra.*

Clearly, then, the parol contract counted upon in appellant's complaint is within the prohibition of the Statute of Frauds, clause 4, and the Uniform Sales Act, and cannot be specifically enforced, unless the facts pleaded establish such performance of the contract by appellant's mother, within the legal requirements applicable thereto, as to remove it from without the pale of the Statutes referred to.

In determining upon the complaint as showing sufficient performance by appellant's mother to take the contract out of the inhibition of the Statutes, we must first recognize that the Uniform Sales Act makes its own provisions as to what part performance operates as a satisfaction of its requirements and that there has been no occasion for any equitable addition thereto. Williston on Contracts, Vol. Two, §533, page 1541. The Act provides the contract affected by the Act shall not be enforceable by action unless (1) "the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same" or (2) "give something in earnest to bind the contract" or (3) "in part payment" or (4) some note or memorandum in writing be signed by the party to be charged. (The numbers assigned are our own for convenience in reference.) (2) and (3) are regarded as the same thing. 49 Am. Jur., Statute of Frauds,

§265, page 583. We have no question presented as to (1) and (4).

It is hardly conceivable that the refraining by appellant's mother from filing or prosecuting any action she may have had against the decedent for appellant's support and maintenance could be construed as "something in earnest to bind the contract" or as "part payment" within the meaning of the statute. It is generally held that the "something" given must be in money or a thing that possesses value, paid to the seller, though the value may be of no large amount. *Patterson* v. *Beard* (1939), 227 Iowa 401, 288 N. W. 414, point 7. There can be little question that the provision of the Act for "something" to be given the seller has reference to something of a definite and ascertainable value capable of operating as a part payment for the goods. For interesting resume of various attempted propositions advanced as being part payment under the Act, see 125 A. L. R. 399. We do not think that appellant's complaint contains facts which show the giving by his mother to the decedent of "something" of value sufficient, within the wording of the Statute, to take the alleged oral contract out of the operation of the Uniform Sales Act and that, insofar as the decedent's personal property, goods, and choses in action are concerned, the alleged contract is unenforceable.

Is the agreement sought to be enforced shown by the facts alleged in the complaint to be withdrawn from the provisions of clause 4 of the Statute of Frauds, Burns' 1949 Replacement, §33-101? Appellant's theory is that there was a full and complete performance of the contract by his mother and that the appellees cannot be permitted to rely upon the Statute of Frauds since decedent received all the benefits while appellant would be left remediless, and the Statute

would be thereby utilized to perpetuate a fraud upon appellant. The complaint alleges that appellant's mother:

> "carried out and performed all of the provisions of said contract and agreement on her part to be performed and in consideration of his (decedent's) said promises and agreement did not bring any action against petitioner's father for his (appellant's) support and maintenance,"

and that decedent failed to perform his part of the contract.

Let us first examine appellant's contention that to permit the appellees to use the Statute of Frauds would have the effect of accomplishing a fraud. The only basis found in the complaint upon which the charge of a resulting fraud upon appellant by the interposition by appellees of the Statute of Frauds, is that decedent failed to perform his alleged agreement.

> ". . . it is clear that the mere breach or violation of an oral agreement which is within the statute of frauds, by one of the parties thereto, or his . . . refusal to perform it, is not of itself a fraud either in equity or at law from which the courts will give relief or which will enable the other party to assert rights and defenses based on the contract. If it were, the statute of frauds would be rendered vain and nugatory. The mere nonperformance of an oral contract, within the statute which is pleaded, where no relation of trust and confidence exists, does not constitute fraud authorizing the interposition of a court of equity. . . . The statute of frauds can not be disregarded for the prevention of mere wrong or to remedy possible losses. . . . the enforcement of the statute must always be, in a sense (although, of course, not in legal contemplation), a fraud or wrong upon him against whom it is enforced.
>
> "In order to escape the effect of the statute upon the theory of fraud, one must establish that he acted in reliance on the contract and on the acts

or acquiescence of the other party thereto in such way *as to have changed his position or prejudiced himself.* . . . When one party induces another, on the faith of a parol contract, *to place himself in a worse situation than he could have been if no agreement existed,* and especially if the former derives a benefit therefrom *at the expense of the latter,* and avails himself of his legal advantage, he is guilty of a fraud, and uses the statute for a purpose not intended—*the injury of another— for his own profit.* . . . ." 49 Am. Jur., Statute of Frauds, §580, pp. 886, 887, 888. (Our emphasis.)

Now, in what way, insofar as is alleged, did either appellant or his mother change their positions or prejudice themselves by reason of decedent's oral promises, or place themselves in a worse situation than they could have been if no agreement had existed? It is not alleged that the decedent's promises were made to induce appellant's mother to engage in the act which resulted in the conception of appellant. The promises, according to the complaint, were made at the time of appellant's birth. If such promises had not been made, the fact of appellant's birth out of wedlock would be none-the-less an accomplished fact. The mother's position was not any different than it would have been if no promises by decedent had been made. She was not prejudiced by reason of the promises. The fact that she bore appellant out of wedlock no doubt changed her position in life and was prejudicial to her. But such change and prejudice did not result from reliance upon decedent's alleged promises. And decedent derived no benefit *at the expense of appellant's mother.* It is possible to assume, of course, that he benefited by her failure to enter charges against him, but such benefit was not derived at her expense nor to her injury, or at the expense or injury of appellant. She possessed the right to file the referred to

action but the fact that she did not do so, in reliance upon decedent's promises, did not, insofar as is alleged, change her then existing position or result in any injury to her. It is conceivable that the filing of the action would have been as distasteful and humiliating to her as it would have been to decedent. Without further extending this particular phase of the case, we see in the complaint no presented facts and circumstances exhibiting any fraud on the part of decedent calling for the intervention of the equitable arm of the court. See: *Green* v. *Groves et al.* (1886), 109 Ind. 519, 526, 10 N. E. 401.

Nor can the theory of estoppel be applied, under the allegations made. The doctrine of estoppel to assert the Statute of Frauds against a claim based upon an oral contract is founded upon the vital principle that "he who by his language or conduct leads another to do, upon the faith of an oral agreement, what *he would not otherwise have done, and changes his position to his prejudice,* will not be allowed to subject such person to *loss or injury,* or to avail himself of that change *to the prejudice of such other party."* 49 Am. Jur., Statute of Frauds, §583, page 890. (Our emphasis.) It does not appear from the complaint that without the decedent's promises, appellant's mother would have filed the action. In converse, to the quoted matter, it may be said that there are no allegations that appellant's mother was lead by decedent's oral promises not to do that which she otherwise would have done; or that she thereby changed her position to her prejudice and injury. There appear no grounds for the estoppel of the appellees to rely upon the Statute of Frauds.

The act of performance of the contract by appellant's mother, as alleged in the complaint and which we must

assume appellant could prove by his evidence, does not appear to be such as to constitute a part performance of the agreement asserted. In *Green* v. *Groves et al.,* *supra,* the test to be applied to asserted acts of part performance of a parol contract is stated thusly:

"The philosophical reason why a part performance will take a parol contract without the statute is, that the acts constituting such part performance, *of themselves,* are to a greater or less extent *evidence of the contract.* It is said by a standard author: 'The general principle is, that the act of part performance *must have reference to the contract,* be in execution of it, and *be an act which would be prejudicial to the party seeking performance,* if the agreement were not enforced. The act performed should tend to show, not only that there has been an agreement, but also to throw light on the nature of that agreement, *so that neither the fact of an agreement, nor even the nature of that agreement, rests solely upon parol evidence,* the parol evidence being auxiliary to the proof afforded by the circumstances of the case itself.' Waterman Specific Performance of Contracts, section 261." (Our emphasis.)

Williston, in his work on Contracts, Revised Edition, Vol. Two, on page 1434, quotes: "An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not in general admitted to constitute a part performance." He cites and quotes, also, from the opinion of Judge Cardozo, in *Burns* v. *McCormick* (1922), 233 N. Y. 230, 135 N. E. 273, as follows, in part:

". . . Not every act of part performance will move a court of equity, *though legal remedies be inadequate,* to enforce an oral agreement affecting rights in land. There must be performance 'unequivocally referable' to the agreement, . . . . *What is done must itself supply the key to what*

*is promised. It is not enough that what is promised may give significance to what is done."* (Our emphasis.)

In the complaint before us, what is alleged to have been done in part performance of contract, namely, that appellant's mother did not file an action against decedent for support and maintenance of appellant, is not "unequivocally" referable to the alleged parol agreement. The alleged forbearance of appellant's mother to file or institute such action, would not, of itself, without the aid of the words of promise, be intelligible or show that there was an agreement, as alleged, or throw light on the nature of such agreement. The fact, if proved, that appellant's mother gave birth to him out of wedlock and that decedent was referred to as his father, and "recognized" appellant as his child and made "oral arrangements" with other persons concerning his recognition, aided by auxiliary evidence that the mother did not file an action against decedent for support and maintenance of appellant would not, of itself, either tend to prove that there was an oral contract as here sought to be enforced or the nature of such agreement, which is, that decedent, by his will, would make appellant a beneficiary of his estate, equal with his legitimate children. The alleged act of part performance, namely, that appellant's mother did not file action for his support, if proved, would not, of itself, be "evidence of the contract" sought to be specifically enforced. It wholly fails to meet the requirements necessary to constitute it an act of part performance. It does not "supply the key to what is promised" and has significance only by what is alleged to have been promised.

Appellant opines that in the case of *Wallace* v. *Long, supra,* and in the many other cases cited by appellees,

there was a "method and right by which the promisee may recover" but in this case the "promisee has no method of recovery" and that, therefore, they should not be followed in this case. However, one is not to be relieved from the restraining influence of the Statute of Frauds and permitted to specifically enforce an oral agreement within such statute merely because of the absence of a legal remedy. Either the oral agreement is within the statute or it isn't. There is no middle ground. As said by Judge Cardozo in the case of *Burns* v. *McCormick,* above cited, "Not every act of part performance will move a court of equity, *though legal remedies be inadequate,* to enforce an oral agreement affecting rights in land." (Our emphasis.)

Appellant urges upon us the cases of *Conley's, Adm'r. et al.* v. *Hall* (1935), 261 Ky. 1, 86 S. W. 2d 1015; *Bowling* v. *Bowling's Adm'r.* (1927), 222 Ky. 396, 300 S. W. 876; and *Sybilla* v. *Connally* (1942), 66 Ga. App. 678, 18 S. E. 2d 783. None of the cases referred to were proceedings for specific performance of an oral contract. The Hall case involved a claim against decedent's estate, alleging upon an oral contract very similar to that in the present case. The court held it was not within the Statute of Frauds. Such does not seem to be the rule declared by our Supreme Court. The Bowling case was an action for damages for breach of contract. It also held that the contract was not within the statute, contrary to the holdings in our State. The Sybilla case from Georgia was an application for the appointment of an administrator. Incidentally, but not as a determination of the main question presented, the court said that an oral contract to make a will with devise of property as compensation for services rendered and to be rendered

the promisor was valid and enforceable. Our Supreme Court held to the contrary in *Wallace* v. *Long, supra.*

Judgment affirmed.

NOTE.—Reported in 143 N. E. 2d 458.

Transfer denied 148 N. E. 2d 194.