KWIKIE MINIT MARKETS, INC., HASKELL B. SCHULTZ, RICHARD MEANS, JOHN N. WELCH, ROBERT E. MEYERS AND RICHARD LEHMAN v. DAVID S. HUTNER.

[No. 3-972A57. Filed February 22, 1973. Rehearing denied April 3, 1973. Transfer denied August 15, 1973.]

*J. A. Bruggeman, William F. McNagny, James M. Prickett, Barrett, Barrett & McNagny*, of Fort Wayne, for appellants.

*Stephen D. Long, William N. Salin, Kennerk, Dumas, Burke & Backs*, of Fort Wayne, for appellee.

### NATURE OF THE APPEAL

STATON, J.—Kwikie Minit Markets was incorporated in 1962 to engage in the grocery business in Fort Wayne, Indiana. The capitalization of the corporation was effected by the issuance of stock and debentures to David S. Hutner, hereinafter referred to as Hutner, and Haskell B. Schultz, Richard Means, John N. Welch, Robert E. Meyers and Richard Lehman, hereinafter referred to as the Directors. Hutner received 100 shares of common stock and six (6) bonds with a face value of $1,000.00. The corporation did not do as well as the investors had hoped and in an effort to improve the financial picture of the corporation, the Directors passed a resolution whereby bonds could be converted into common stock. All the investors except Hutner converted their bonds into common stock.

President-Director Schultz corresponded with Hutner concerning the conversion of his bonds. Hutner answered that he would not convert. The business of the corporation did not improve. Two years later, the Directors authorized a liquidation of assets and made a distribution. Hutner was not reimbursed for the face amount of his bonds.

Hutner brought suit against the corporation and the Directors to recover the principal and interest due on his bonds. After all pleadings, interrogatories and admissions of fact had been filed, Hutner filed a motion for summary judgment. The trial court granted the motion for summary judgment.

The issues presented in the Directors' brief, which will be discussed in our opinion, may be summarized as follows:

1. Did the affidavit, interrogatories and requests for admissions properly present to the trial court for its consideration on summary judgment the affirmative defense of estoppel?
2. Did the Directors properly raise the issue of contractual waiver for the trial court in their motion to correct errors to preserve the issue on appeal?

In our opinion which follows, we hold that the affirmative defense of estoppel was not properly presented to the trial court for its consideration upon a motion for summary judgment and that the issue of contractual waiver was not mentioned or referred to in the motion to correct errors. We affirm the judgment of the trial court in our opinion.

STATEMENT OF THE FACTS: Kwikie Minit Markets, Inc. was incorporated in 1962 and conducted a grocery business. The capital structure was effected by the issuance of common stock and interest bearing debentures. Seventy-two bonds at a face value of $1,000.00 and 2,500 shares of $10.00 par value stock were issued. Six bonds and 100 shares of common stock were issued to David S. Hutner. In 1966, the corporation began to experience financial difficulties. The Board of Directors passed several resolutions in an attempt to revitalize the company. Those resolutions which are pertinent to this appeal involve the converting of the outstanding bonds into common stock. The first resolution passed by the shareholders for the conversion of bonds into common stock was made on September 19, 1966. It reads as follows:

"RESOLVED: that upon receipt of the approval from the Secretary of State of the State of Indiana of the amend-

ments to Articles V and VI to the Articles of Incorporation of this corporation, which amendments were adopted at this meeting, that the corporation Board of Directors thereupon authorize conversion of the debentures now outstanding of the corporation, into common capital stock of the new type authorized by the new amendments of the Articles of Incorporation, and which stock shall be voting stock, on a dollar for dollar conversion, at a rate of $10 of debenture bonds for each share of common voting no par value stock (that is to say, 100 shares of stock for each $1,000 face value of debentures) ;. . . ."

However, the Directors rescinded the above resolution and issued the following resolution on November 10, 1966:

"WHEREAS, a resolution was passed at a special meeting of shareholders held on September 19, 1966, recommending to this board of directors that upon receipt of the approval from the Secretary of State of Indiana of the amendments to Articles 5 and 6 to the Articles of Incorporation of this corporation, which amendments were adopted at said meeting of September 19, 1966, that the conversion of debentures of the corporation now outstanding be authorized into common capital stock with voting rights on a dollar for dollar basis at a rate of $10 face value of debentures for each share of common voting no par value stock and that the conversion of the said debentures into the said shares of common voting no par value stock of this corporation shall be offered in this manner to all holders of debentures outstanding of this corporation on the same basis, and that unless all the debentureholders agree to convert their bonds to common voting no par value stock on the basis aforementioned and that all debentureholders agree to waive all interest due to the date of conversion of their bonds to stock and that if there by [be] any debentureholders who refuse to accept the offer in its terms as above contained, that no debentures be converted into stock; and,

"WHEREAS, this board of directors does not deem it practicable to require such conversion offer to be accepted by all debenture holders in order to be effective as recommended in said resolution aforementioned; now,

"THEREFORE, BE IT RESOLVED: that this corporation, through its board of directors, does now hereby authorize the conversion of the debentures now outstanding of this corporation into the common voting no par value capital stock of this corporation on a dollar for dollar basis, that

is, at a rate of $10 of face value of debenture bonds for each share of common voting no par value stock, with waiver of all interest that may be due on debentures so converted by the debentureholder; and,

"RESOLVED FURTHER: that this offer for conversion of the debentures shall be made to all holders of debentures outstanding of this corporation on this same basis in accordance with the attached 'Notice of Redemption of Debentures', a copy of which is attached hereto and made a part hereof, and in accordance with the terms of said notice, and that the debentures of all debentureholders executing the agreement to convert and returning the same duly executed by the debentureholder on or before December 31, 1966, in the form attached hereto, duly waiving interest as above provided, shall be retired and cancelled and shares of the common voting stock of this corporation be issued as fully paid and nonassessable to such debentureholders at the rate of one share of such stock for each $10 of face value of debentures so retired and cancelled; and,

"RESOLVED FURTHER: that said notice of said offer be mailed to each debentureholder at his address listed with the corporation on or before December 21, 1966."

On the same day that the above resolution was issued, November 10, 1966, a notice of redemption was issued to David S. Hutner. Several letters were exchanged between Haskell B. Schultz, President of the corporation, and David S. Hutner concerning the conversion. The only conclusion that can be drawn from this correspondence is that Hutner declined to convert his bonds into common stock and further declined to invest any further monies in the corporation.

The corporation continued to do business for an additional two years without financial improvement. Finally, the Board of Directors passed a resolution to dissolve the corporation. After all the assets were converted into liquid assets and after pay-off of all outstanding debts, a partial distribution of assets was made. No money was paid to Hutner on his outstanding bonds. It was also admitted by Schultz that Hutner never signed the notice of redemption and still remains the record owner of the bonds on the books of the corporation.

Hutner brought suit against the corporation and each of the Directors of the corporation to recover the principal and interest due on his bonds. Since it has been admitted that the assets of the corporation are now insufficient to pay the $6,000.00 liability on the bonds, Hutner contends that the Directors are personally liable under IC 1971, 23-1-10-2; Ind. Ann. Stat. § 25-251 (Burns 1970) which reads in pertinent part as follows:

> "(c) The directors of a corporation who vote for or assent to any distribution of assets of a corporation to its shareholders during the liquidation of the corporation without the payment and discharge of, or making adequate provision for, all known debts, obligations, and liabilities of the corporation shall be jointly and severally liable to the corporation for the value of such assets which are distributed, to the extent that such debts, obligations and liabilities of the corporation are not thereafter paid and discharged."

Hutner then filed a motion for summary judgment based upon the pleadings, answers to interrogatories and admissions of facts on July 13, 1971. The investors responded with an affidavit of Haskell B. Schultz, which reads as follows:

> "Haskell B. Schultz, being duly sworn upon his oath, says that he is President and Director of Kwikie Minit Markets, Inc., and intimately connected with the affairs of said corporation. Affiant says that prior to the formation of said corporation, discussions were carried on as to the capitalization of said company, and it was agreed that all investments would be partly in bonds and partly in common stock, with a definite proportion of each investor's capital going into the two forms of investment. At the time the plaintiff, David S. Hutner, invested in said corporation, said corporation owned no property whatever and the 'bonds' did not represent bonds in the normal use of the term. The sole reason for the capitalization with bonds and common stock was to permit the withdrawal of that portion of the investment represented by 'bonds' under the most favorable tax considerations. This form of investment was discussed with the plaintiff and to the knowledge of affiant, he was fully informed what form his investment was taking. At the same time, the plaintiff made it clear that his investment

was partially on behalf of his brother, who had a major interest in a local beer distributorship, and such investment was made because the brother could not make such an investment on his own because of statutory provisions in this state.

"Affiant further says that at the time all investors were asked to convert their bonds into common stock, Kwikie Minit Markets, Inc. was having severe financial difficulties, and its capital was impaired. At that time, it would have been impossible to pay off the investors on a basis which would have returned the investment originally made. In the opinion of affiant, the company would have failed had additional funds not been made available.

"The plaintiff, David S. Hutner, showed no interest in his investment after it was made, and although frequently notified of meetings involving the future of the company, he did not attend and indicated, both to affiant and others, that he was more than willing to leave the entire matter in the hands of the directors. The plaintiff was fully informed, or was in a position to be fully informed, about the financial problems of the company, and knew, or was in a position to know, that the company would have failed without the investment of further monies. The plaintiff did not indicate to those investors putting additional monies into the corporation that he would not agree with all the other stockholders in converting his bonds into common stock. While he later has taken that position by his silence at the time the funds were invested, he took advantage of the belief of the investors putting in new money, that he would cooperate with the others, all of whom were known to him, and who had been friendly to him in the past.

"In his action, the plaintiff seeks a preferred position which he secured only because he led fellow investors to believe that he would at least cooperate in their attempts to salvage the corporation.

"When the corporation was partially dissolved and a pro rata distribution was made on the common stock, the plaintiff received those funds allotted to the common stock and has never offered to return them. By such action he has estopped himself from questioning the dissolution process. There would have been no funds available for either common stock or bonds had additional monies not been invested in the corporation, and plaintiff on the one hand wishes to avail himself of the additional monies invested, while on the other hand, attempting to evade his responsibilities in permitting said money to be invested with the investors

believing that the general arrangements for such new investment would be agreed to by all the stockholder-bond-holders.

"The bonds on which plaintiff brings suit provide that under certain conditions, they may be subordinated to other claims. There is no showing that such bonds have not been subordinated or will not be subordinated in the future. Monies owing the directors and officers for work for which they have received no compensation to date, would provide a superior claim over the bonds. Until such time as there is a showing such bonds have not been subordinated or will not be subordinated in the future, plaintiff's claim would not be absolute as a matter of law."

The trial court granted the motion for summary judgment on December 15, 1971. Kwikie Minit Markets, Inc. and its Directors filed their motion to correct errors on May 11, 1972, which was overruled on June 15, 1972. This appeal was fully briefed and distributed to this district on November 21, 1972. Oral argument was completed on January 18, 1973.

STATEMENT ON THE ISSUES: Two issues will be discussed in our opinion section entitled "STATEMENT ON THE LAW." The first concerns the pleading of an affirmative defense such as estoppel under Rule TR. 8(C) of the Indiana Rules of Procedure. In the present case, the trial court had before it a single affidavit, interrogatories and requests for admissions. The "Answer" filed by the Directors did not assert any affirmative defense. The issue is whether the affirmative defense of estoppel was properly before the trial court for its consideration when it sustained Hutner's motion for summary judgment.

The second issue concerns the raising of an issue for the trial court's consideration in a motion to correct errors and the preservation of that issue on appeal. In the present case, the contractual waiver issue was never presented to the trial court in the motion to correct errors. It was raised for the first time on appeal in the Directors' brief. The issue is whether the Directors were specific enough in their motion

to correct errors to have presented the question of contractual waiver to the trial court and to have preserved the question on appeal.

STATEMENT ON THE LAW: Estoppel and waiver are the two propositions of law upon which the Directors rely for showing error. They have the affirmative duty to show that the trial court committed error. *Kuykendall* v. *County Commissioners of Marion County* (1968), 142 Ind. App. 363, 364, 234 N.E.2d 860. We will first explore estoppel.

ESTOPPEL: The Directors contend that this affirmative defense theory is reflected by the actions of Hutner before the bond conversion and after partial distribution of assets to him. In their oral argument before this Court, the Directors contended that the trial court ignored their argument of estoppel. Our examination of the pleadings in the record reveals only an "Answer" to Hutner's complaint. The "Answer" does not even allude to the affirmative defense of estoppel. Indiana Rules of Procedure, Rule TR. 8(C) provide that, "A responsive pleading shall set forth affirmatively and carry the burden of proving: . . . estoppel . . . and any other matter constituting an avoidance, matter of abatement, or affirmative defense." Failure to set forth the affirmative defense of estoppel in a responsive pleading is a waiver of the defense. *Tornello* v. *Deligiannis Bros.* (7th Cir. 1950), 180 F. 2d 553; *International Carrier-Call & Television Corp.* v. *Radio Corp. of America* (D. C. N. Y. 1943), 51 F. Supp. 156.

Therefore, no affirmative defense of estoppel was before the trial court for its consideration. We find no error.

WAIVER: The Directors contend that the bonds contain a contractual waiver of the right to sue the Directors. The "no recourse" clause reads as follows:

"No recourse shall be had for the payment of the whole or any part of the principal of this debenture to or against the present or former or future stockholders, officers or

directors of the company or any of them either directly or through the company by virtue of any statute or representation expressed or implied, or any rule of law or the enforcement of any assessment or otherwise, all such liability of stockholders, officers or directors being waived and released by the holder hereof by the acceptance of this debenture."

A careful examination of the motion to correct errors reveals that the "no recourse" clause was never brought to the trial court's attention. Any issues asserted to be errors must be stated with specificity in the motion to correct errors; otherwise, the issue is waived on appeal. *Spivey* v. *State* (1971), 257 Ind. 257, 274 N.E.2d 227.

The Directors have failed to support their burden of showing that the trial court committed reversible error. The judgment of the trial court should be and the same hereby is affirmed.

Hoffman, C.J. and Sharp, J., concur.