JOHN LAWSHE AND DOROTHY LAWSHE *v.*
GLEN PARK LUMBER COMPANY, INC.

[No. 3-777A185. Filed May 8, 1978. Rehearing denied July 12, 1978.]

*Thomas R. Fadell,* of Gary, *Lowell E. Enslen, Gary K. Matthews,* of Hammond, for appellants.

*Jack W. Lund, Matthew P. Dogan,* of Gary, for appellees.

STATON, J. — John and Dorothy Lawshe appeal from a judgment entered against them as the titleholders of certain real estate and in favor of Glen Park Lumber Company, Inc. ("Glen Park"), who provided materials for the construction of a house on the Lawshes' property. The Lawshes contend that the judgment rendered by the trial court is contrary to law.

We find no error, and we affirm.

The evidence most favorable to the judgment of the trial court shows that in June of 1966, John and Dorothy Lawshe contracted with Jack Ware for the construction of a single family residence upon the Lawshes' land. Ware, in turn, subcontracted with Glen Park. Pursuant to the terms of the subcontract, Glen Park was to provide certain construction materials in exchange for payments from Ware totaling approximately $6,000. Ware managed to bring the project to a stage of completion where the house was fully framed and under roof before a dispute, which ultimately led to Ware's discharge, arose between him and the Lawshes. Most of the materials employed in bringing the house to that stage had been furnished by Glen Park. The Lawshes had made payments totaling $6,000 to Ware prior to his discharge. Ware, however, failed to make any payments to Glen Park.

On November 2, 1966, Karl Chnupa, the president and general manager of Glen Park, spoke with John Lawshe. During the course of the conversation, Chnupa informed Lawshe that Glen Park had not yet been paid. Lawshe's response was ". . . I'll see to it that your, ah, our account was (sic) taken care of." Chnupa construed Lawshe's statement as a personal promise to pay for the materials. In reliance on that promise, Glen Park forbore the filing of a mechanic's lien.

After the family residence was completed, the Lawshes refused to pay for the materials supplied to Ware. Glen Park brought this action, presenting several theories of recovery in support of its contention that the Lawshes were obligated to pay. The trial court, after a trial on the merits rendered a general finding in favor of Glen Park. As a result of the general verdict, this court is bound to affirm the decision of the trial court on any theory before that court which is supported by the evidence. *Sheraton Corporation of America v. Kingsford Packing Co., Inc.* (1974), 162 Ind. App. 470, 319 N.E.2d 852.

The Lawshes contend that the exclusive procedure by which a materialman can obtain a personal judgment against the owner of the subject real estate is set forth in IC 1971, 32-8-3-9, Ind.Ann.Stat. § 43-708 (Burns 1965),[1] and that, because Glen Park failed to comply with the provisions of the statute, the trial court's judgment is contrary to the law. We agree that, as a general rule, compliance with the statutory procedure is a prerequisite to the obtaining of a personal judgment by a materialman against the owner of the real estate. *Aetna Glass Corporation v. Mercury Builders, Inc.* (1969), 145 Ind. App. 286, 250 N.E.2d 598. Compliance with that procedure, however, is not required where, as here, the materialman's cause of action is predicated on the owner's promise to pay for the materials.

The Lawshes further contend that the oral promise to pay for the materials is unenforceable because it falls within the purview of the Statute of Frauds.[2] At the outset, we note that the Statute of Frauds is an affirmative defense. Ind. Rules of Procedure, Trial Rule 8(C). In order to properly preserve an affirmative

---

1. *Personal liability of owner.*—Any subcontractor . . . employed . . . in erecting, altering, repairing or removing any house . . . or in furnishing any material or machinery therefor, may give to the owner thereof, or, if said owner is absent, to his agent, notice in writing particularly setting forth the amount of his claim and services rendered, for which his employer or lessee is indebted to him, and that he holds the owner responsible for the same; and the owner shall be liable for such claim, but not to exceed the amount which may be due, and may thereafter become due, from him to the employer or lessee, which may be recovered in an action whenever an amount equal to such claim, over other claims having priority, shall be due from such owner to the employer or lessee. And any such subcontractor . . . by giving notice as above provided, setting forth the amount of labor he has engaged to perform, or of materials or machinery he has engaged to furnish, in erecting, altering, repairing or removing of any of the buildings or other structures above described, shall have the same rights and remedies against such owner for the amount of such labor performed, or materials or machinery furnished, after said notice is given, as are above secured and provided, for those who serve notice after the labor is performed or the materials or machinery furnished.

2. IC 1971, 32-2-1-1 (Burns Code Ed., Supp. 1977), which reads in pertinent part as follows:

"*When contracts must be in writing.*—No action shall be brought in any of the following cases:

. . .

"Second. To charge any person, upon any special promise, to answer for the debt, default or miscarriage of another;

. . .

"Unless the promise, contract or agreement upon which such action shall be brought,

defense, the party with the burden of proving the defense (in this case, the Lawshes) must either have set forth the defense in a responsive pleading[3] or show that the defense was litigaged by the parties.[4] Here, the Lawshes did neither. Therefore, the affirmative defense was not before the trial court for its consideration. It is axiomatic that such a defense cannot be raised for the first time on appeal.

Even if the Lawshes had presented and preserved the affirmative defense of the Statute of Frauds, we conclude that they could not prevail since the judgment could be affirmed upon the doctrine of equitable estoppel.

The basis for the doctrine of equitable estoppel is fraud, either actual or constructive, on the part of the person estopped. *Marcum v. Richmond Auto Parts Co.* (1971), 149 Ind. App. 120, 270 N.E.2d 884. Constructive fraud is fraud that arises by operation of law from conduct which, if sanctioned by the law, would secure an unconscionable advantage. *Hoosier Insurance Co. v. Ogle* (1971), 150 Ind. App. 590, 276 N.E.2d 876. Thus, in order to prevail on a theory of constructive fraud, one need not establish the existence of an actual intent to defraud. The result of the conduct triggers the application of the theory.

The mere nonperformance of an oral promise which falls within the scope of the Statute does not constitute such a fraud as would warrant the intervention of a court of equity. But, if one party is induced by another, on the faith of an oral promise, to place himself in a worse position than he would have been in had no promise been made, and if the party making the promise derives a benefit as a result of the promise, a constructive fraud exists which is subject to the trial court's equity jurisdiction. *Hurd v. Ball* (1957), 128 Ind. App. 278, 143 N.E.2d 458.

---

or some memorandum or note therefor, shall be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, excepting however, leases not exceeding the term of three [3] years."

3. TR. 8(C); *Kwikie Minit Markets, Inc. v. Hutner* (1973), 155 Ind. App. 307, 292 N.E.2d 832.

4. TR. 15(B); *Hidden Valley Lake, Inc. v. Kersey* (1976), 169 Ind. App. 339, 348 N.E.2d 674.

Here, the evidence, together with the reasonable inferences that could be drawn therefrom, would support the findings that Glen Park, on the faith of John Lawshe's promise to pay for the materials, forbore the filing of a mechanic's lien; that, as a result of the forbearance, Glen Park placed itself in a worse position than it would have been in had there been no promise; and that the Lawshes derived a benefit therefrom at the expense of Glen Park.

Accordingly, the judgment of the trial court is affirmed.

Garrard, P.J., Concurs;

Robertson, J. (By designation), Concurs.

NOTE—Reported at 375 N.E.2d 275.