## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 10 2016, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Raquet, Vandenbosch & Steele
Kokomo, Indiana

ATTORNEYS FOR APPELLEE
DANIEL DUMOULIN, SR.

Cassandra A. Kruse
Gregory L. Noland
Emswiller, Williams, Noland &
Clarke, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Daniel Dumoulin, II,

*Appellant/Cross-Appellee-Intervenor,*

v.

Daniel Dumoulin, Sr.,

*Appellee/Cross-Appellant-Petitioner,*

and

Joan Dumoulin,

*Appellee-Respondent*

June 10, 2016

Court of Appeals Case No.
52A05-1505-DR-500

Appeal from the Miami Superior Court

The Honorable A. Christopher Lee, Special Judge

Trial Court Cause No.
52D02-0901-DR-11

**Crone, Judge.**

# Case Summary

After Daniel Dumoulin, Sr. ("Husband"), filed a petition to dissolve his marriage to Joan Dumoulin ("Wife"), she moved to have Daniel Dumoulin, II ("Son"), joined as an indispensable party to answer for his interest in various real properties. During the course of the proceedings, Husband claimed that Son owed an outstanding balance on Son's agreement to purchase a bar called the Ultimate Place 2B ("the Ultimate") from Husband and Wife. The trial court issued an order ("the Money Judgment") entering judgment in favor of Husband and Wife on Husband's claim.

Son appeals the Money Judgment, raising several issues: (1) he argues that the trial court lacked the authority to determine whether he owed monies to Husband and Wife because Son was never put on notice that either Husband or Wife was seeking a monetary judgment against him; (2) the trial court lacked subject matter jurisdiction because the issue was not ripe for review; (3) the Statute of Frauds bars Husband and Wife's recovery on the agreement to purchase the Ultimate; and (4) the trial court abused its discretion by refusing to admit Exhibit J.

Husband cross-appeals, arguing that the trial court erred in denying his motion to correct error and his motion for relief from the trial court's April 9, 2013 order ("the April 2013 Order"), which determined ownership of various real estate.

[4] We conclude that Son had notice that Husband was claiming that Son owed money, that the trial court had subject matter jurisdiction, that Son waived the Statute of Frauds defense, and that the trial court did not abuse its discretion in refusing to admit Exhibit J. We also conclude that Husband has waived the issue he raises on cross-appeal. Therefore, we affirm.

## Facts and Procedural History

[5] Husband and Wife owned and operated the Ultimate, a sports bar in Kokomo. In 2005, Husband and Wife agreed to transfer the Ultimate to Son, but the parties vigorously dispute the terms of the agreement ("the Purchase Agreement"). Son claims that he agreed to pay off various debts in exchange for the Ultimate. Husband claims that, in addition to assuming various debts, Son agreed to pay cash for a total purchase price of $2,100,000. The parties do not dispute that Son assumed operation of the Ultimate in 2005 and has paid all debts and costs associated with it since its transfer to him.

[6] After Son took over the operations of the Ultimate, its liquor license came up for renewal. The renewal involved hearings before the Alcohol and Tobacco Commission ("ATC"), during which both Husband and Son testified under oath that Son's purchase price for the Ultimate was $2,100,000. The renewal of the Ultimate's liquor license was the subject of *Indiana Alcohol & Tobacco Commission v. Ultimate Place*, LLC, No. 34A05-0804-CV-209 (Ind. Ct. App. Sept. 30, 2008), in which another panel of this Court concluded that "the evidence reveals that [Son] is responsible for paying $2.1 million for the business." *Id.*, slip op. at 6.

[7]     In January 2009, Husband filed a petition for marriage dissolution. Husband and Wife owned multiple parcels of real estate, including several on East 50 North ("the E 50 N Properties"). In April 2012, Wife filed a motion to bifurcate hearing and join indispensable party, averring that certain property claimed as marital property by Husband was actually titled to Son and asking the trial court to add Son as a party to the dissolution proceedings and conduct a separate hearing to determine the marital estate. Following a hearing, the trial court granted Wife's motion and ordered Son to be joined as an indispensable party.

[8]     In January 2013, all parties participated in mediation, but they were not successful in resolving the parties' interests in the Ultimate or the E 50 N Properties. All the parties joined in a stipulation in which both Husband and Wife claimed a partial interest in the Ultimate. Appellant's App. at 47. Later that month, a hearing was held to determine whether the disputed properties should be included or excluded from the marital estate, and Husband, Wife, and Son appeared. In February 2013, Son filed a motion for leave to reopen the evidence to submit a Family Settlement Agreement ("FSA") for his purchase of the Ultimate to support his version of the Purchase Agreement. The FSA was only partially executed, having been signed by Husband but not by Wife or Son. The trial court did not rule on Son's motion, and it does not appear that the trial court relied on the FSA in its April 2013 Order. In relevant part, the April 2013 Order concluded that the Ultimate and several of the E 50 N Properties were not marital assets. With regard to the Ultimate, the trial court

concluded that Son had an oral agreement with Husband and Wife to purchase the Ultimate and that it was not a marital asset. *Id*. at 30-32. Significantly, the trial court also concluded that the payments required under the Purchase Agreement had not been completed, and that Husband and Wife had a remaining interest in Son's promise to pay under the agreement. *Id*. at 32.

[9] In May 2013, Husband filed a motion to correct error and a motion for relief from judgment challenging in pertinent part the trial court's exclusion of the Ultimate and certain E 50 N Properties from the marital estate. *Id*. at 33-61. Son filed a response to Husband's motions, in which he acknowledged that the parties' interests in the Ultimate was the "most hotly disputed issue" and alleging that Husband and Wife had previously testified regarding their intent to divest themselves of any interest in the Ultimate and that Husband was "now seeking to 'recapture' the alleged monetary interest in the Ultimate." *Id*. at 64. In September 2013, the trial court held a hearing on the motions.[1] In October 2013, the trial court issued an order denying Husband's motion to correct error and his motion for relief from judgment with regard to the Ultimate and certain E 50 N Properties.[2] *Id*. at 67-68.

[10] In January 2014, Husband filed an accounting concerning rents received and expenses paid for several rental properties pursuant to a preliminary order

---

[1] The transcript of this hearing is not in the record before us.

[2] The trial court granted Husband's motion to correct error on issues not relevant to this appeal.

issued at the onset of the dissolution. At Husband's request, the trial court ordered that any objections to Husband's accounting be filed on or before March 14, 2014. Wife submitted a written objection, but Son did not. Husband filed a response to Wife's objections.

[11] In April 2014, Husband, Wife, and Son attended a mediation session, which produced a stipulation and a mediator's report. The parties were still disputing the purchase price for the Ultimate. Husband claimed that the outstanding balance due for the purchase of the Ultimate was $1,173,215.86, whereas Wife claimed that Son owed $137,000. Appellee's App. at 58. In preparation for the final hearing, the parties engaged in discovery. In response to Son's discovery request, Husband produced exhibits that he intended to submit at the final hearing showing the outstanding balance for the total purchase price of the Ultimate. In June 2014, Husband filed a motion in limine seeking to bar Son from introducing any evidence regarding Husband's January 2014 accounting because Son had not filed any objection to it.

[12] On December 10 and 11, 2014, a final hearing on the dissolution was held. The first day of the hearing was dedicated to presenting evidence on the purchase price of the Ultimate. Son offered the FSA into evidence without objection. Tr. at 17-18; Appellant's App. at 52-61; Ex. AA. On the second day, Wife attempted to introduce Exhibit J, an accounting of property at 2605 E. 50 N., which the trial court had previously determined was not a marital asset and was owned by Son. Husband objected. The trial court sustained Husband's objection, explaining that the evidence was not relevant to the issues before it.

Husband testified regarding the ATC hearings, at which he stated under oath that Son purchased the Ultimate for $2,100,000, and he submitted the transcript of his ATC testimony. *Id.* at 165; Petitioner's Ex. 5. Husband also submitted the transcript of Son's testimony at the ATC hearing, which reveals that Son testified that the purchase price for the Ultimate was $2,100,000. Petitioner's Ex. 2.

[13] At the conclusion of the hearing, the trial court granted the dissolution of marriage, entered the dissolution decree, and took all pending issues under advisement. In January 2015, Son filed a motion to reconsider the trial court's decision not to admit Exhibit J. On April 30, 2015, the trial court issued the Money Judgment against Son and in favor of Husband and Wife for $581,004.54 each. The Money Judgment included a memorandum, in which the trial court explained that it "cannot ignore the prior sworn testimony of [Husband] and [Son] that the purchase price was 2.1 million dollars," and that Husband "concedes that part of that purchase price included the debts that [Son] has paid thus far, leaving a balance of $1,162,009.08." Appellant's App. at 95. This appeal ensued.

## Discussion and Decision

### Section 1 – The trial court did not lack authority to issue a monetary judgment.

[14] First, Son avers that he was joined as a party to the dissolution action to answer to his interests in the contested marital estate and was not put on notice by the

pleadings that either Husband or Wife was seeking a monetary judgment against him, and therefore, the trial court lacked authority to issue such an order. In support, he cites *Noblesville Redevelopment Commission v. Noblesville Associates Ltd. Partnership*, 674 N.E.2d 558 (Ind. 1996), in which our supreme court held that one of the named parties did not receive sufficient notice in the pleadings. *Id*. at 564-65. However, *Noblesville* is distinguishable because the issue in that case was whether the trial court properly granted a motion for a judgment on the pleadings.

[15]    Here, in contrast, Son has been substantially involved in the dissolution action for years and was made aware early on that Husband was claiming that Son had outstanding obligations under the Purchase Agreement. In January 2013, Son participated in mediation and joined in a stipulation indicating that both Husband and Wife claimed a partial interest in the Ultimate. Son also participated in the January 2013 evidentiary hearing to determine ownership of various properties. In its April 2013 Order, the trial court concluded that Son had an agreement with Husband and Wife to purchase the Ultimate and it was not part of the marital estate. The trial court also concluded that the payments required under the Purchase Agreement had not been completed and that Husband and Wife had a remaining interest in Son's promise to pay under the agreement. Husband filed a motion to correct error claiming that Son agreed to pay off various debts plus an additional lump sum based on the difference between the purchase price and the actual amounts paid toward those debts. Husband's motion to correct error, filed one and a half years before the final

hearing, reveals that Husband was making a claim that Son owed money for the purchase of the Ultimate. Son participated in another mediation to determine the purchase price of the Ultimate and the extent of his outstanding obligations. The first day of the final hearing was dedicated to determining whether Son owed Husband and Wife money for the purchase of the Ultimate. Son appeared and disputed the purchase price and whether he owed money to Husband and Wife. In light of this history, we conclude that Son had notice that a claim was being asserted against him.[3]

## Section 2 – The trial court had subject matter jurisdiction.

[16]     Next, Son asserts that the trial court lacked subject matter jurisdiction because the issue was not ripe for review.

> Subject matter jurisdiction is the power of a court to hear and determine the general class of cases to which the proceedings before it belong. Whether a court has subject matter jurisdiction depends on whether the type of claim advanced by the petitioner falls within the general scope of authority conferred upon the court by constitution or statute. Included within subject matter jurisdiction is whether a claim is ripe for review. Ripeness relates to the degree to which the defined issues in a case are based on actual facts rather than on abstract possibilities, and are capable of being adjudicated on an adequately developed record.

---

[3] Son also argues that the trial court was barred by the doctrine of res judicata based on the April 2013 Order. However, his argument is unavailing because the April 2013 Order was not a final appealable order. *See Zaremba v. Nevarez*, 898 N.E.2d 459, 463 (Ind. Ct. App. 2008) ("'For principles of res judicata to apply, there must have been a final judgment on the merits and that judgment must have been entered by a court of competent jurisdiction.'") (quoting *Matter of Sheaffer*, 655 N.E.2d 1214, 1217 (Ind. 1995)).

*Thomas ex rel. Thomas v. Murphy*, 918 N.E.2d 656, 662-63 (Ind. Ct. App. 2009) (citations and quotation marks omitted), *trans. denied* (2010).

[17] Son contends that the amount of his outstanding obligation under the Purchase Agreement will not be known until he pays all the obligatory debts under it. We disagree. The FSA, which Son submitted, required him to pay off the debts and remit the remaining purchase price within five years. Appellant's App. at 53. Also, Husband testified that Son agreed to satisfy all obligations for the purchase of the Ultimate within five years of the initiation of the transaction in 2005 and that the deadline has passed. Tr. at 205. Accordingly, we conclude that the issue was ripe for review and that the trial court had subject matter jurisdiction.

## Section 3 – Son has waived his Statute of Frauds defense.

[18] Son argues that the Statute of Frauds bars Husband and Wife from recovering under the Purchase Agreement. The Statute of Frauds requires any contract for the sale of real estate to be in writing.[4] However, contracts for the sale of real property that do not satisfy the Statute of Frauds are voidable, not void. *Fox Dev., Inc. v. England*, 837 N.E.2d 161, 166 (Ind. Ct. App. 2005); *see also* 14 RICHARD R. POWELL, POWELL ON REAL PROPERTY § 81.02[1][a] (noting that

---

[4] Indiana Code Section 32-21-1-1(b) provides,

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent … (4) An action involving any contract for the sale of land.

oral contract to convey real estate may be successful if Statute of Frauds defense is not raised in pleadings). The Statute of Frauds is an affirmative defense, and affirmative defenses must be specifically pled. *Joyner v. Citifinancial Morts. Co.*, 800 N.E.2d 979, 982 (Ind. Ct. App. 2003); Ind. Trial Rule 8(C). Generally an affirmative defense, including the Statute of Frauds, is waived by failure to raise it in a timely fashion. *See E & L Rental Equip., Inc. v. Wade Constr., Inc.*, 752 N.E.2d 655, 660 (Ind. Ct. App. 2001) (concluding that E & L waived Statute of Frauds defense where it failed to include it in its responsive pleading and trial court properly denied E & L's motion to amend pleading it filed after both parties presented their cases-in-chief); *Uebelhack Equip., Inc. v. Garrett Bros., Inc.*, 408 N.E.2d 136, 140 (Ind. Ct. App. 1980) (concluding that Uebelhack waived Statute of Frauds defense where it did not raise it until its motion for judgment on the evidence). To preserve an affirmative defense, the party with the burden of proving the defense "must either have set forth the defense in a responsive pleading or show that the defense was litigated by the parties." *Lawshe v. Glen Park Lumber Co.*, 176 Ind. App. 344, 347, 375 N.E.2d 275, 277-78 (1978). "It is axiomatic that such a defense cannot be raised for the first time on appeal." *Id*.

Here, Son does not direct us to any portion of the record showing that he argued to the trial court that the Purchase Agreement was unenforceable because it violated the Statute of Frauds.[5] In fact, he sought to introduce the

---

[5] Son notes that Husband raised the Statute of Frauds defense in his motion to correct error, but that does not preserve the issue for Son.

FSA as early as February of 2013 as written evidence of the Purchase Agreement, although it appears that the trial court did not consider it in its April 2013 Order. At the final hearing, no one disputed that there was an agreement for Son to purchase the Ultimate from Husband and Wife. The only dispute was as to the purchase price. Son himself introduced the FSA against Husband as written evidence of the Purchase Agreement in an attempt to support his version of the terms of the agreement. Accordingly, we conclude that Son has waived his Statute of Frauds defense.

## Section 4 – The trial court did not abuse its discretion in refusing to admit Exhibit J.

Son challenges the trial court's refusal to admit Exhibit J. We will reverse the trial court's decision to admit or exclude evidence only for an abuse of discretion. *Estate of Carter v. Szymczak*, 951 N.E.2d 1, 5 (Ind. Ct. App. 2011), *trans. denied*. An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id*.

Exhibit J is an accounting prepared by Wife regarding the collection of rental payments on property at 2605 E. 50 N. In its April 2013 Order, the trial court found that the 2605 E. 50 N. property was not a marital asset and was owned by Son. Son argues that on the first day of the final hearing "everyone agreed to allow Son to introduce evidence concerning the value of properties and monies owed to him through Wife's testimony." Appellant's Br. at 13. Son's characterization is not a fair reflection of what occurred. On the first day of the final hearing, Son's counsel asked Wife whether she had knowledge regarding

Son's financial situation relating to properties subject to the marital estate and whether she was going to deal with those issues the following day. Tr. at 27. At the end of the day, Son's counsel indicated to the trial court that there were some accounting issues involving Son and that it was his understanding that they would be addressed on the second day. *Id*. at 228. The trial court simply responded, "Yes." *Id*. Husband did not agree to the admission of any specific evidence and could not reasonably have been expected to object to evidence before learning its exact nature.

[22] On the second day, Wife attempted to introduce Exhibit J. Husband objected. The trial court asked Wife's counsel how Exhibit J was "going to help [it] make a decision here today." *Id*. at 523. Wife's counsel responded that Wife "made an accounting as to what she thinks the balance is due to her son." *Id*. The trial court sustained Husband's objection, explaining that it was refusing to admit the evidence because it was "getting a little off field on theories." *Id*. The trial court excluded Exhibit J because it was not relevant to the issues that were currently before the court. We cannot say that the trial court abused its discretion in refusing to admit Exhibit J.

## Section 5 – Husband has waived the issue raised in his cross-appeal.

[23] Husband contends that the trial court erred by denying his motion to correct error and his motion for relief from judgment. Specifically, he argues that the trial court erred in its April 2013 Order by excluding 2653 and 2625 of the E 50 N properties from the marital estate. In its April 2013 Order, the trial court

concluded that "2653 E. 50 N. [was] conveyed by [Son] to John and Janet Corwell for good consideration and is not a marital asset," and "2625 E. 50 N. is presently titled to [W]ife which [Son] built a house and transferred to [W]ife. She mortgaged and is paying for the property. Husband admits he made no payments on the real estate." Appellant's App. at 31.

[24] In his appellee/cross-appellant's brief, Husband's argument challenging the trial court's decision relies almost entirely on citations to his motion to correct error. Husband's motion to correct error is not evidence in support of his argument. The remaining few citations in his argument are to the transcript of the final hearing rather than the January 2013 hearing upon which the April 2013 Order is based. In his appellee/cross-appellant's reply brief, Husband attempts to remedy the deficiency by repeating his argument with citations to the transcript of the January 2013 hearing. Simultaneous with the filing of his appellee/cross-appellant's reply brief, Husband submitted notice to this Court that he had filed in the trial court a supplemental transcript request for the court reporter to prepare the transcript of the January 2013 hearing. However, the case is fully briefed, the January 2013 transcript is not in the record before us, and there has been no request to this Court to hold the appeal in abeyance.

[25] A party's argument "must contain the contentions of the appellant on the issues presented, supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." Ind. Appellate Rule 46(A)(8)(a). The purpose of Appellate Rule 46 "is to aid and expedite review, and to relieve the appellate

court of the burden of searching the record and briefing the case." *Thacker v. Wentzel*, 797 N.E.2d 342, 345 (Ind. Ct. App. 2003). "It is well settled that we will not consider an appellant's assertion on appeal when he has not presented cogent argument supported by authority and references to the record as required by the rules." *Id*. "If we were to address such arguments, we would be forced to abdicate our role as an impartial tribunal and would instead become an advocate for one of the parties. This, clearly, we cannot do." *Shepherd v. Truex*, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004). Therefore, we conclude that Husband has waived this issue for failing to present a cogent argument.

[26] Based on the foregoing, we affirm the trial court in all respects.

[27] Affirmed.

Najam, J., and Robb, J., concur.