Richard L. McCORRY and Suzanne McCorry, Appellants–Defendants,

v.

G. COWSER CONSTRUCTION, INC., Snow–N'–Son, Inc., L. Scott Electric Co., Inc., Impact Heating & Air Conditioning, Inc., Appellees–Plaintiffs.

No. 45A05–9306–CV–196.

Court of Appeals of Indiana, Fifth District.

July 6, 1994.

---

William J. Moran, Highland, for appellants.

Michael L. Muenich, Hand Muenich & Wilk, Highland, Bruce A. Lambka, Crown Point, for appellees.

BARTEAU, Judge.

Richard and Suzanne McCorry (McCorry) appeal from the trial court's judgment in favor of four subcontractors who sought payment from McCorry after the general contractor breached its agreements with both McCorry and the subcontractors. Two of the subcontractors claim payment based on a theory of unjust enrichment and *quantum meruit*, and the other two seek to foreclose mechanic's liens or, in the alternative, bring actions pursuant to notices of personal responsibility filed under the Indiana mechanic's lien statutes.

We modify the trial court's judgment with regard to two of the appellees in order to clarify the legal basis for those judgments, and to correct the amount of one of the judgments, and affirm as modified.

## FACTS

In the late spring and early summer of 1990, McCorry secured estimates from several contractors for the construction of a house on some real estate McCorry owned in St. John, Indiana. On July 19, 1990, McCorry entered into a contract with Contemporary Builders of Indiana, Inc. and Jack Sokol (Sokol) which provided that Sokol would erect a single-family house on the McCorry real estate at a cost of $170,000. McCorry made a $5,000 down payment, leaving a contract balance of $165,000. The McCorry–Sokol contract was contingent upon McCorry obtaining a commitment for construction financing in the amount of $165,000 within 30 days of the date of the execution of the contract. However, McCorry did not even apply for financing until sometime in the spring of 1991, some nine months after the contract was entered into. McCorry received a commitment for financing, but let it lapse because the house was still not finished at the time, and applied for new financing in the fall of 1992. McCorry also had the right under the contract to require payments to be made to Sokol through a title company escrow account, but elected not to do so.

Sokol subsequently entered into agreements with a number of subcontractors to provide materials and labor for the house, including the four plaintiff-appellees in this appeal. Those subcontractors are G. Cowser Construction, Inc. (Cowser), for concrete and masonry work; Snow–N–Son, Inc. (Snow), for excavating services, stone, fill, and grading; L. Scott Electric Co., Inc. (Scott), for electrical wiring and fixtures; and Impact Heating and Air Conditioning, Inc. (Impact), for the furnace, duct work, humidifier, and air conditioning.

The estimated completion date of the house under the McCorry–Sokol contract was January 20, 1991. The contract provided that McCorry was not to occupy the premises until full payment of the purchase price was made. McCorry could inspect the premises at any time during construction, but was to deal solely with Sokol and not with any of Sokol's subcontractors. However, the trial court found that beginning in January of 1991, McCorry exercised increas-

ing control over the construction, regularly contacting subcontractors, promising payment, acquiring materials, and arranging for work to be completed.

Sokol did not complete the construction within the time provided in the Sokol–McCorry contract, and, in fact, left the structure uncompleted. Sokol also failed to pay for tools, machinery, and equipment supplied for the building by subcontractors. McCorry was aware by January 10, 1991, that Sokol had breached its contract, but made a partial payment to Sokol after that date.

McCorry paid Sokol $52,500 between the date the contract was entered into and January 31, 1991, and paid Sokol $50,800 on February 1, 1991, a total of $103,300. Thereafter, McCorry selectively paid subcontractors and suppliers a total of $77,772.59, some of which was for items not included in the McCorry–Sokol contract.

## STANDARD OF REVIEW

 This was a bench trial in which the trial court made special findings of fact and conclusions of law pursuant to an Ind. Trial Rule 52(A) motion by counsel for plaintiffs Cowser and Snow. When the trial court has made special findings, this court on appeal applies a two-tiered standard of review. First, we must determine whether the evidence supports the findings. Then, we must determine whether the findings support the judgment. If the special findings support the judgment and are not clearly erroneous, the judgment must be affirmed. We will consider only the evidence in the record which supports the judgment, along with the reasonable inferences to be drawn from the evidence. *United Farm Bureau Mut. Ins. Co. v. Ira* (1991), Ind.App., 577 N.E.2d 588, 592, *trans. denied.*

Because the claims of Scott, Impact, Cowser and Snow may fairly be characterized as falling within only two causes of action, we will analyze the Scott and Impact claims together as an unjust enrichment question, and the Cowser and Snow claims as a personal responsibility and mechanic's lien issue.

## UNJUST ENRICHMENT

 There are four criteria to evaluate whether evidence supports a judgment under a theory of unjust enrichment in a dispute between a subcontractor and a property owner. They are:

1. Whether the owner impliedly requested the subcontractor to do the work;

2. Whether the owner reasonably expected to pay the subcontractor, or the subcontractor reasonably expected to be paid by the owner;

3. Whether there was an actual wrong perpetrated by the owner; and

4. Whether the owner's conduct was so active and instrumental that the owner "stepped into the shoes" of the contractor.

*Stafford v. Barnard Lumber Co.* (1988), Ind., 531 N.E.2d 202, 204. The evidence supports the trial court's findings of unjust enrichment.

### Scott Claim

On July 21, 1990, Scott submitted a proposal to Sokol for electrical work on the McCorry house, which proposal was accepted by Sokol soon afterwards. The cost for the Scott work was $6,992, with 75% to be paid upon completion of the "rough" and the balance to be paid when the job was finished.

Before Scott started working on the house, he and McCorry went through the house and discussed a number of changes and additions to the original proposal. Scott indicated what the unit costs for the changes and additions would be, and, as a result of those discussions, McCorry made a number of substantial changes to the electrical system, adding switches, lights, and ceiling fans. McCorry also asked Scott to install television cable and jacks, which were not mentioned in the original Scott proposal. The Scott–Sokol contract required that any change orders be made in writing; however, no change orders were prepared. There was testimony that it is customary in the residential construction industry to make changes during construction without written orders. McCorry was on the job site frequently and saw the materials being used and the labor being performed by Scott. McCorry did not object to

the quality of Scott's labor or materials during the construction.

Sokol gave Scott $4,000 for partial payment of the Scott work. Scott later provided McCorry with a copy of a statement of the balance due which was directed to Sokol and based on the original proposal and the changes McCorry requested.

*Impact Claim*

Impact entered into a contract with Sokol on November 15, 1990, to provide heating and air conditioning for the McCorry house. The contract price was $5,925. The contract also included a handwritten entry for flashing for the chimney and around the house, at a cost of $500. The flashing was added at McCorry's request. Impact did the work called for in the contract, though the air conditioning system shakes and rattles when it is activated. It is unclear whether that problem is a result of Impact's work or the electrical system; however, Impact did return to the house to try to correct the problem.

Sokol paid Impact a total of $3,500 in February or March of 1991. In June of 1991, McCorry called Impact and asked that the air conditioner be installed. McCorry promised to pay Impact its balance due in order to induce Impact to complete the installation. Impact installed the air conditioner two days later, but McCorry did not pay.

*Discussion*

■ The evidence in the trial record adequately supports the court's findings of fact, and those findings support the trial court's judgment under the *Stafford* standard. In the case of both Scott and Impact, there is evidence that McCorry requested the subcontractors not only to complete the contracted-for work, but also to make specific changes and additions going beyond the work called for in the subcontractors's contracts with Sokol. The subcontractors reasonably expected to be paid by McCorry. All parties were aware that further payment was unlikely to be forthcoming from Sokol, yet McCorry was continuing to arrange for work to be done and, in fact, had begun selectively paying other subcontractors after making the last partial payment to Sokol on February 1,

1991. There was an "actual wrong perpetrated by the owner," *Stafford*, 531 N.E.2d at 204, in that McCorry induced Scott and Impact to do work not provided for in the Sokol–McCorry contract, and has not paid for that work.

Further, McCorry's own conduct contributed to the problem of non-payment of certain subcontractors. The McCorry–Sokol contract required McCorry to obtain a commitment, within thirty days of the date of the contract or the first work done under the contract, for construction financing in the full contract amount less the down payment previously given to Sokol. The contract also allowed McCorry to arrange for payment through a reputable title company, but McCorry did not elect to do so. Had McCorry observed the contractual financing requirement and payment provisions, Sokol's default would not have prevented payment to the subcontractors.

Finally, McCorry's conduct was so active and instrumental that the owner "stepped into the shoes of the contractor." *Id.* The evidence supports the trial court's finding that McCorry, beginning in January of 1991, "exercised increasing control over construction, regularly contacting subcontractors, promising payment, acquiring materials and arranging for work to be completed."

Because the evidence supports the trial court's finding of unjust enrichment, we affirm the trial court as to the claims of Scott and Impact.

### MECHANIC'S LIEN/NOTICE OF PERSONAL RESPONSIBILITY

Cowser and Snow both seek recovery by means of foreclosure of mechanic's liens or through actions under the Notice of Personal Responsibility provision of the Indiana Mechanic's Lien statutes. While only Cowser filed a timely mechanic's lien, Snow properly filed a notice of "personal responsibility" under the mechanic's lien statutes, and is entitled to recover under that provision.

*Snow Claim*

Snow entered into a contract with Sokol on September 9, 1990, to perform excavating services, stone work, backfill, and grading at

the McCorry construction site. Snow began excavating the basement three days later. The original contract proposal called for Snow to be paid $4,900 for his work, and Snow testified that he hauled away some dirt at the end of the job for a charge of $100. On February 1, 1991, Snow filed a Notice of Intention to Hold a Mechanic's Lien on the McCorry real estate for the sum of $5,000 and a notice of intent to hold McCorry personally responsible for the value of Snow's services, also in the amount of $5,000.[1] Snow filed its notices prior to McCorry's last payment to Sokol. However, McCorry did not receive notice of Snow's filings until after making the last payment to Sokol. The notices were addressed to McCorry at the address listed on the property tax transfer card at the Lake County Auditor's office for purposes of notice under the mechanic's lien statutes. However, at the time the notices were sent, McCorry was not living at either the address of record or the address where the new house was being built. McCorry testified that the notice was received February 5, 1991.

In its conclusions of law, the trial court held that Snow's "notice of personal responsibility and notice of intention to hold mechanics lien under Ind.Code 32–8–3–9 and 32–8–3–1, were not timely filed and are invalid." However, the trial court went on to conclude that Snow was entitled to judgment on his complaint in the amount of $5,100. It stated no legal basis for that conclusion.

Indiana Code 32–8–3–1 provides that a written notice of lien rights must be provided to the owner of property subject to the lien and filed in the county recorder's office within 60 days of the date of the first delivery of material or labor performed. Because Snow's first labor was performed on September 12, 1990, and the Notice of Intention to Hold Mechanic's Lien was not filed until February 1, 1991, the notice was not timely filed and no lien attached.

However, Snow's notice of personal responsibility filed pursuant to I.C. 32–8–3–9 was not untimely, and provides a sufficient basis for a judgment in Snow's favor. That section permits the same persons who would be entitled to a lien on a landowner's property to assert limited personal liability against the owner even though they are not in direct privity with the owner, but only with the general contractor. While a mechanic's lien must be filed within a specified period of time, there is no such time limitation in the personal responsibility statute. *Barker v. Buell* (1871), 35 Ind. 297, 303. Thus, Snow's notice under I.C. 32–8–3–9 was timely.

██ Snow is entitled to recover under the personal responsibility section:

> The personal liability law is designed to protect the subcontractor against the consequences of the contractor's absconding or going broke or otherwise defaulting.... The personal responsibility section gives a subcontractor an alternative means to a mechanic's lien of shifting from himself to the owner the burden of the general contractor's financial difficulties.

*Coplay Cement Co. v. Willis & Paul Group* (7th Cir.1993), 983 F.2d 1435, 1437.

McCorry argues that no recovery is available to Snow under I.C. 32–8–3–9 because under that section, the owner's (McCorry) liability to the subcontractor may not exceed the amount which may be due, or which may thereafter become due, from the owner to the subcontractor's employer (Sokol). At the time McCorry received the notice of personal responsibility from Snow, McCorry had paid Sokol a total of $108,300 of the $170,000 contract amount. McCorry contends the difference of some $60,000 was no longer "due" on its contract with Sokol, because Sokol had

---

1. The trial court's findings of fact state that Snow's contract had a value, including the extra $100, of $5,100, but that at the time Snow filed his notices, there was a contract balance due of $5,000. In its conclusions of law, the trial court found that there remained due and owing on the Snow contract the sum of $5,100, and that Snow was entitled to judgment in that amount. However, the record does not reflect any charges beyond those provided for in the original Snow–Sokol contract in the amount of $4,900, and the additional $100 charge for hauling dirt away from the site. That total amount of $5,000 is the amount indicated in the Snow Notice of Intention to Hold a Mechanic's Lien and Notice of Personal Responsibility.

breached his contract with McCorry by that point.[2]

■ While the statute is ambiguous, *Indianapolis Power and Light Co. v. Todd* (1985), Ind.App., 485 N.E.2d 632, 635, McCorry's interpretation of the personal liability statute is inconsistent with the purposes of the section. If a contractor's breach meant that no amount remained "due" for purposes of the personal responsibility statute, the "consequences of the contractor's absconding or going broke or otherwise defaulting" *Coplay*, 983 F.2d at 1437, would be that no subcontractor could ever recover under that section. That result is obviously inconsistent with the purpose of the personal responsibility section, which is to put the subcontractor on the same footing with the contractor, and to prevent the inequity of an owner enjoying the fruits of a subcontractor's labor and materials without paying for them. *Todd*, 485 N.E.2d at 636. Rather, the amount "due" must be interpreted to mean the amount unpaid on the original contract, which amount remained in the hands of the owner and would have been available for payment of subcontractors had the contractor not defaulted. *See Adamson v. Shaner* (1892), 3 Ind.App. 448, 452, 29 N.E. 944, 945 ("*bona fide* indebtedness" to subcontractor found when contractor abandoned its contract, leaving the house unfinished, and owner was forced to pay out more to have the building completed than he would have owed if the contractor had completed the contract).

Because nearly $60,000 was never paid to Sokol by McCorry on the original contract, Snow's claim under its notice of personal responsibility does not "exceed the amount which may be due ... from him [McCorry] to the employer [Sokol]" and Snow is entitled to recover $5,000, the amount for which McCorry was held personally responsible in the Snow notice. We thus affirm the trial court's judgment as modified to reflect the correct amount of the Snow claim.

■ Because the trial court found both Snow's lien notice and its notice of personal responsibility to be untimely, it did not address Snow's request for attorney's fees in its conclusions of law or its judgment. Because Snow's recovery is based on the personal responsibility provisions of the mechanic's lien statute, and is not, in fact, an action to enforce a lien, attorney fees are not available in Snow's action.

Indiana Code 32–8–3–14 provides for recovery of attorney's fees in all "suits brought for the enforcement of any *lien* under the provisions of this chapter." (Emphasis added) An action under I.C. 32–8–3–9, the personal liability section, is not such an action because notice under that section does not create a lien. Snow correctly notes that at least three Indiana appeals court decisions have "assumed" that perfection of a notice under § 9 does create a lien. *See Gibson Lewis Corp. v. Northern Ind. Pub. Serv. Co.* (1988), Ind.App., 524 N.E.2d 1316, 1319 n. 4, *reh'g denied, trans. denied; Zeigler Building Materials v. Parkison* (1980), Ind.App., 398 N.E.2d 1330, 1332; *Indianapolis P. & L. Co. v. Southeastern Supply Co.* (1970), 146 Ind. App. 554, 572, 257 N.E.2d 722, 737. None of those decisions offered any rationale for the assumption that a lien was created, nor cited any authority for that proposition.

We decline to follow those cases because the language of the code itself strongly suggests § 9 is not a "lien" provision, and a series of decisions by our supreme court leaves no doubt that an action under § 9 cannot create a lien on real property.

The personal liability section of the code makes no mention of a lien on real estate. It provides only for a cause of action to hold the owner of real estate personally liable. The remedy provided by § 9 is purely personal, while the remedy provided by I.C. 32–8–3–1, the mechanic's lien statute, is *in rem. O'Halloran v. Leachey* (1872), 39 Ind. 150, 152 (addressing the virtually identical predecessor statutes to the current sections). The

---

2. On June 29, 1992, the trial court granted McCorry's motion for default judgment against Sokol, finding Sokol had breached his contract with McCorry by failing to build the house within the agreed time, by failing to construct the house in a workmanlike manner, and by failing to pay for tools, machinery, equipment, materials and labor supplied for the residence. The court did not establish a date of the breach in its order. However, it did find that McCorry was aware of Sokol's breach by January 10, 1991.

§ 9 language also contains no provisions governing priority as to other liens, nor provisions for waiving the right to obtain a lien as found in I.C. 32–8–3–1, the statute which provides for obtaining a mechanic's lien against real property. *See Matter of Hull* (N.D.Ind.1982), 19 B.R. 501, 509.

Our supreme court has explicitly recognized that the § 9 action is not a lien:

> We are of the opinion that [I.C. 32–8–3–9] has no reference whatever to the subject of liens. It does not determine by whom, or under what circumstances, a lien may be acquired, or what steps shall be taken to acquire it. It simply provides for fixing a *personal liability* upon the owner of a building under certain circumstances.... There is no allusion in the section to the subject of liens, but, on the contrary, its entire scope and effect, letter and spirit, are confined to personal liabilities, and the mode of fixing and enforcing them by action.

*Barker v. Buell* (1871), 35 Ind. 297, 302–303 (emphasis in original). Thus, the code allows a subcontractor to acquire a lien on property, or to hold the owner of the real estate personally liable, or to do both. *Crawford v. Crockett* (1876), 55 Ind. 220, 224; *see also Coplay Cement Co.*, 983 F.2d at 1437 (personal liability section gives subcontractor an alternative means to a mechanic's lien of shifting from himself to the owner the burden of the general contractor's financial difficulty) and *Nash Engineering Co. v. Marcy Realty Corp.* (1944) 222 Ind. 396, 411–412, 54 N.E.2d 263, 268–269 (distinguishing in detail the "lien" section of the statute from the "personal liability" section).

Because I.C. 32–8–3–14 only provides for the recovery of attorney fees in "suits brought for the enforcement of any *lien* under the provisions of this act," such fees cannot be recovered in Snow's action under the personal responsibility section.

*Cowser Claim*

Cowser entered into a contract with Sokol on or before September 1, 1990, to perform concrete and masonry work on the McCorry house, and began work on September 14, 1990. The amount Cowser was to be paid under the contract with Sokol is not clear from the trial record. On January 30, 1991, Cowser filed a notice of personal responsibility against McCorry and Sokol and a notice of intention to hold a mechanic's lien on the McCorry property (also addressed to both McCorry and Sokol), both in the amount of $14,006. That figure reflects the amount Cowser had invoiced Sokol for the work Cowser had done up to that date. In mid-April of 1991, some three months after McCorry became aware that Sokol had defaulted, McCorry contacted Cowser and asked Cowser to complete the driveways, sidewalks, floors, and other work. Cowser would not perform additional work until it was paid for the work it had done up to that date, and McCorry promised to pay Cowser $14,006 if Cowser would return to work. Cowser performed the remaining work called for by the contract between June 4 and June 14, 1991, which work was valued at $8,060. On June 26, 1991, Cowser filed a notice of personal responsibility and notice of intention to hold a mechanic's lien, addressed to both Sokol and McCorry, in the amount of $22,066, the total due for both jobs.

On June 15, 1991, McCorry paid Cowser $14,006, and Cowser gave McCorry a "partial release of mechanics lien" in that amount, which released the January 30th lien. The trial court found that Cowser's contract had a remaining value of $8,060, that Cowser performed all the work called for by the contract, and that "Cowser's written notice of intention to hold mechanics lien under Ind. Code 32–8–3–1 was effective upon recording on June 26, 1991 for the work completed between June 4 and June 14 of 1991." It awarded Cowser judgment on his complaint to foreclose the lien in that amount, plus interest, attorney fees, and costs.

■ The mechanic's lien upon which Cowser was granted judgment was timely filed. Two sections of the Indiana Code impose two different time limits on the filing of mechanic's liens. Under I.C. 32–8–3–1, a subcontractor must give the owner of property notice of the existence of lien rights within 60 days of the date of the first delivery of materials or of the first labor performed. McCorry correctly notes that Cowser made

its first delivery of concrete on September 14, 1990, and did not file its first mechanic's lien until January 30, 1991, over 60 days later. However, the 60-day time limit in that section applies only to subcontractors who supply labor or material to "any contractor, subcontractor, mechanic *or anyone other than the owner*...." *Id.* (emphasis added). The supplemental lien filed by Cowser on June 26, 1991, is not untimely because by that date, Cowser was not supplying labor or material to "anyone other than the owner."

The trial court found that McCorry was aware by January 10, 1991, that Sokol had breached his contract with McCorry by failing to complete the residence. However, some three months after becoming aware of Sokol's breach, McCorry asked Cowser to return to the construction site and complete the work called for in the original contract, and promised to pay Cowser for doing so. As explained in the discussion of the Scott and Impact "unjust enrichment" claims, *supra*, McCorry had "stepped into the shoes of the contractor." Cowser was no longer dealing with "anyone other than the owner," and thus was not required to file its lien notice within 60 days of its first delivery of labor or materials.

■ Rather, the timeliness of Cowser's June 26 lien is determined by I.C. 32-8-3-3, which requires the filing of notice of intention to hold a lien within 60 days *after* performing labor or furnishing materials. A lien under this section is timely if filed within 60 days of the date when the *last* work is done by the subcontractor. *See Gooch v. Hiatt* (1975), 166 Ind.App. 521, 526, 337 N.E.2d 585, 588. Cowser's notice to McCorry was filed 12 days after the completion of his work and was timely.

■ McCorry asserts that, even if Cowser's mechanic's lien was valid, Cowser is not entitled to the attorney fees awarded by the trial court. McCorry's argument is based on language in I.C. 32-8-3-14:

"attorney fees shall not be recovered as part of the judgment against the property owner in any suit in which it has shown that the contract consideration for such labor ... has been paid, in fact, by the property owner...."

McCorry's contract with Sokol called for a total payment of $170,000. McCorry paid Sokol a total of $103,300. However, because the amount eventually paid by McCorry to Sokol and the numerous subcontractors who worked on the house exceeded $170,000, McCorry contends that the "contract consideration" has been paid, and that because Sokol breached, McCorry paid Sokol all the consideration due him.

McCorry directs us to no authority in support of its interpretation of the phrase "contract consideration," and that interpretation is logically inconsistent with the purposes of the mechanic's lien statutes. There is no doubt that McCorry, in selectively paying subcontractors, ultimately expended more money than was called for in the original contract with Sokol; but the money paid to subcontractors who were never parties to the McCorry–Sokol agreement cannot be considered the "contract consideration" for the Sokol agreement.

■ Consideration is defined as: "The cause, motive, price, or impelling influence that *induces* a contracting party to *enter into* a contract." Black's Law Dictionary 306 (6th ed. 1990) (emphasis added). Because consideration is an element of the formation of, or inducement to enter into, a contract, the "contract consideration" between McCorry and Sokol would be the $170,000 originally agreed upon. Further, the purposes of the mechanic's lien statutes are not served by a finding that a breach or abandonment of a partially performed contract can determine the "consideration" for that contract. The mechanic's lien laws are meant to prevent unjust enrichment of property owners who enjoy the material improvement of their property. *See City of Evansville v. Verplank Concrete* (1980), Ind.App., 400 N.E.2d 812, 815. As noted above, breach or abandonment by a contractor is a typical situation giving rise to a lien action by a subcontractor. If the "contract consideration" for an owner-contractor agreement were limited to the amount actually paid to a defaulting contractor at the time of breach, then attorney fees could never be available to a subcontrac-

tor who won a judgment in a suit to enforce a lien in such a typical situation. According to the McCorry interpretation, the "contract consideration" would *always* have "been paid, in fact, by the property owner ... for whom the improvement has been constructed," I.C. 32–8–3–14, simply by virtue of the contractor's breach. The legislature could not have intended such a result, and we affirm the trial court's award of attorney fees to Cowser.

The judgment of the trial court, as modified, is affirmed.

RUCKER and GARRARD, JJ., concur.