POINDEXTER EXCAVATING, INC., and
McGovern Steel Fabricators,
Appellants,

v.

Gary D. DOWNEY and Kathleen
L. Downey, Appellees.

In re PEARSON CONSTRUCTION
CO., INC., Debtor.

Gary D. DOWNEY and Kathleen
L. Downey, Plaintiffs,

v.

PEARSON CONSTRUCTION
CO., INC., Defendant.

No. IP 95–1299–C B/S.
Bankruptcy No. 94–2374–FHO–7.
Adv. No. 94–206.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 3, 1996.

Timothy L. Black, Ancel & Dunlap, Indianapolis, IN, Frank Bohannon, Indianapolis, IN, David L. Byers, Holwager & Holwager, Beech Grove, IN, John R. Carr III, Buschmann Carr & Shanks, Indianapolis, IN, Richard C. Clark, Indianapolis, IN, Frank W. Hogan, Symmes Voyles Zahn Paul & Hogan, Indianapolis, IN, Douglas W. Pool, Foley Pool, Indianapolis, IN, David L. Simmons, Hoffman Drewry Hancock & Simmons, Indianapolis, IN, Charles Young, Brownsburg, IN, for Plaintiffs.

Kenneth C. Meeker, U.S. Trustee, Indianapolis, IN.

Thomas C. Scherer, Bingham Summers Welsh & Spilamn, Indianapolis, IN, for Defendant.

### *ENTRY*

BARKER, Chief Judge.

Appellants Poindexter Excavating, Inc. ("Poindexter") and McGovern Steel Fabricators ("McGovern") appeal the bankruptcy court's entry of summary judgment for appellees Gary and Kathleen Downey ("the Downeys"). For the reasons discussed below, the bankruptcy court's decision is **affirmed.**

## I. BACKGROUND

The Downeys, owners of commercial real estate at 6400 Airway Drive, Indianapolis, Indiana ("the property"), contracted with Pearson, the debtor in bankruptcy, to serve as a general contractor on a commercial construction project on the property. Appellants Poindexter and McGovern were engaged by Pearson to serve as subcontractors and suppliers on the project. Poindexter performed excavating services and McGovern furnished material, labor and equipment.

The contract between Pearson and the Downeys provides that Pearson was obligated to pay all subcontractors and suppliers and warranted all work to be free from defect. (Articles 10.2, 10.4). The Downeys had the right to withhold payment for defective work, for claims filed, or for Pearson's failure to pay subcontractors or suppliers. (Article 16.2). The contract provides that the Downeys would pay monthly sums, but would keep a 10% retainage on the first 50% of the contract price. (Article 4). The contract further provides that final payment shall not be due until the Contractor has delivered to the owner a complete release of all liens, or receipts covering labor, materials and equipment, or a bond indemnifying the owner against a lien. (Article 16.3).

Pearson filed for Chapter 11 bankruptcy on March 30, 1994, at which time the project was substantially complete, and the Downeys had paid all contract sums to Pearson with the exception of a $120,000 retainage, as provided for in the contract. Subcontractors and suppliers had not, however, been paid. Various subcontractors and suppliers recorded mechanics' liens on the property pursuant to I.C. 32–8–3–1 ["Mechanic's Lien Statute"][1] in the approximate amount of $127,627, and/or issued notices of personal liability ("PLN"s) to the Downeys pursuant to I.C. 32–8–3–9 ["PLN Statute"][2], in the amount of $176,637.

The Downeys claim that an asphalt drive was defectively paved and must be repaired at a cost of approximately $100,000; that certain "punch list" items remain to be completed; and that the project itself must be completed as contemplated in the contract. On June 17, 1994, the Downeys filed a complaint in the bankruptcy court which sought relief from stay to permit them to exercise

---

1. I.C. 32–8–3–1 provides that subcontractors and suppliers may have a lien upon the property or structure and on the interest of the owner, to the extent of the value of any labor done or material furnished, and that these claims shall be preferred debts.

2. I.C. 32–8–3–9 provides that any subcontractor or supplier may give to the owner written notice that he holds the owner liable for claims against the contractor; and that the owner shall be liable for such claim, not to exceed the amount due from the owner to the contractor.

their right to setoff any amount due Pearson under the contract against all sums spent to secure release of the mechanics' liens, to perform remedial work, and to complete the project. The complaint also requested a declaration that their setoff rights against the retainage are prior to the interest of the parties issuing PLN notices, and that amounts paid to remove liens, perform remedial work or complete the project are not paid in contravention of the PLN statute. On September 6, 1994, the Downeys filed a Motion for Summary Judgment seeking a declaratory finding that they were entitled to setoff against the retainage, and that such setoff is prior to the interest of the PLN claimants. On December 20, 1994, after notice to all parties and after a hearing, the bankruptcy court approved an agreed entry between the Downeys and Pearson which lifted the automatic stay, reserved for later determination the amount of the Downeys' setoff, and provided for the payment to the Clerk of Court of such funds as may later be found due under the contract. In a post hearing brief filed January 19, 1995, the Downeys stated that the Mechanics' Liens had all been settled and released. On September 13, 1995, the bankruptcy court granted the Downeys' summary judgment motion, ruling as a matter of law that the Downeys' right of setoff reduces the amount a subcontractor or supplier could claim under the PLN statute. The issue of the specific nature and amount of setoffs was reserved for later determination. Notwithstanding this reservation, appellants have filed this interlocutory appeal of the bankruptcy court's summary judgment ruling.

## II. ANALYSIS

### A. Standard of Review

■ In reviewing a decision of a bankruptcy court, this court is required to accept the bankruptcy judge's findings on questions of fact as long as they are not clearly erroneous. *Matter of Generes*, 69 F.3d 821, 824 (7th Cir.1995). The bankruptcy court's conclusions of law are, however, subject to de novo review on appeal. *Meyer v. Rigdon*, 36 F.3d 1375, 1378 (7th Cir.1994); *Matter of Wiredyne, Inc.*, 3 F.3d 1125, 1126 (7th Cir. 1993). Because appellants challenge only the bankruptcy court's legal findings, we must apply a de novo standard of review.

### B. Jurisdictional Issues

In addition to their appeal of the bankruptcy court's declaratory judgment ruling on the merits, appellants raise several challenges to the bankruptcy court's exercise of jurisdiction over the declaratory judgment action. We will address appellants' jurisdictional arguments before moving on to the merits.

### 1. Existence of Material Issues of Fact

■ Appellants contend that the Downeys have failed to present facts sufficient to establish the existence of an actual controversy; or, phrased in slightly different terms, because the Downeys did not present proof of the exact nature or extent of the alleged defects and uncompleted punch list items, "there was nothing to set off" and thus nothing for the bankruptcy court to decide.[3]

Appellants argue that the Downeys must first prove that they possess a valid setoff claim before the bankruptcy court can determine whether the setoff should be allowed priority over PLN claims, and that since there was no proof regarding the nature or amount of the setoff, summary judgment was inappropriate. The Downeys, in their motion for summary judgment, incorporated their prior "Agreed Entry" as their Statement of Material Facts. The Agreed Entry, in relevant part, states that mechanics' liens had been filed in the approximate amount of $121,627.00,[4] and that:

> liens were already settled did not render the bankruptcy court's summary judgment findings merely advisory.

**3.** Appellants also contend that the bankruptcy court's findings were "merely advisory" because the Downeys had already settled the mechanics' liens by the time summary judgment was entered. Although the mechanics' liens were already settled, the question still remained open whether these payments could be set off against the amount owed to Pearson and thus to the PLN claimants. Thus the fact that the mechanics'

**4.** Appellants do not dispute that mechanics' liens in the amount of $121,671.50 were filed against the property. (See Appellants' Brief at 7).

7. The Downeys assert that the construction and installation of asphalt drive required under the Contract was not performed in a workmanlike manner. They estimate a cost of necessary corrective work on the asphalt drive in the amount of $100,000. In addition, the Downeys claim there are "punchlist" items yet to be completed under the Contract at a cost yet to be determined. . . .

These facts, the Downeys contend, are all the facts necessary for the bankruptcy court to address the legal question of their right of setoff against the retainage. There was and is no factual dispute regarding the fact of the contractor's breach, that the Downeys would incur some damages as a result of the breach, and that the subcontractors were pressing their PLN claims against the Downeys.

■ "Factual issues will only prevent summary judgment if the disputed issues are material." *Parrillo v. Commercial Union Insurance Company*, 85 F.3d 1245 (7th Cir. 1996). The issue for the court to decide on summary judgment was the Downeys' legal right to a setoff, which is capable of determination without findings regarding the specific nature of defects or the validity or exact amount of the setoff. The question of the scope and amount of any setoff was not before the bankruptcy court on the Motion for Summary Judgment. (Bankruptcy court Findings of Fact and Conclusions of Law, at 3). The factual issues raised by Appellants are material to the question of the *amount* of setoff and the extent of any repair work, but are not material to the question of the owners' legal right to setoff against the retainage. In fact, it is interesting to note that the Appellants themselves, in their "Motion of Leave to File a Motion for Leave to Appeal," stated that appeal should be granted

"[t]o avoid unnecessary and costly litigation with regard to the amount and validity of mechanics liens and the amount and validity of the Owners' cost of completing remedial work and punch list items. If the Bankruptcy Court erred [in determining that the owners could offset these costs against the PLN claims], then additional proceedings for this purpose would be un-

necessary. *The cost effective administration of justice requires that the issue of priority of interests be resolved before proceeding with proof of the amount of each claim.*"

(Motion for Leave to File, at 5) (emphasis added). Thus, appellants' current position, that it was improper for the bankruptcy court to determine the priority of interests as between the Downeys' setoff rights and the PLN claims without proof of the nature or amount of the setoff, is entirely inconsistent with one of the reasons they cited in urging this court to grant this interlocutory appeal.

We find that any facts in dispute with regard to the validity, nature or specific amount of the Downeys' setoff, or the repair work they deemed necessary, were not material to the question presented to the bankruptcy court on summary judgment. Therefore, to the extent appellants challenge the bankruptcy court's findings on the grounds that there was no actual case or controversy, or that there were material facts in issue, we **affirm** the bankruptcy court's grant of summary judgment to the Downeys.

### 2. Subject Matter Jurisdiction

■ Appellants argue that the dispute regarding the relative priorities of an owner's right of setoff and a PLN claim does not arise under Chapter 11, nor is it related to a case under Chapter 11, and is therefore outside the jurisdiction of the bankruptcy court.

■ Bankruptcy Courts can exercise two types of jurisdiction over proceedings: "core jurisdiction" and "related to" jurisdiction. Bankruptcy courts have core jurisdiction over matters "arising under" or "arising in" a case under Title 11. 28 U.S.C. § 157. Core matters, for the purposes of core jurisdiction, include, *inter alia:*

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate;

＊　　＊　　＊　　＊　　＊　　＊

(K) determinations of the validity, extent, or priority of liens; . . . and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . .

28 U.S.C. § 157(b)(2)(A), (B), (K), (O). Bankruptcy courts can exercise "related to" jurisdiction over matters where "the outcome of the proceedings could conceivably affect the amount of property available for distribution or the allocation of estate assets among creditors." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159 (7th Cir.1994); *see also, Celotex Corp. v. Edwards*, —— U.S. ——, ——, n. 6, 115 S.Ct. 1493, 1499, n. 6, 131 L.Ed.2d 403; *Matter of Xonics, Inc*, 813 F.2d 127, 131 (7th Cir.1987).

The Downeys argue that the bankruptcy court had core jurisdiction over this declaratory judgment action because the resolution of the declaratory judgment action related to allowance or disallowance of claims (the Downeys' setoff claim), and administration of the estate (the request for relief from stay and for application of the retainage to the Downeys' setoff claim). In the alternative, the Downeys argue that the bankruptcy court had "related to" jurisdiction over the action because the outcome could affect the amount of property available for allocation to creditors of the bankruptcy estate.

Appellants argue that by approving the agreed entry in which the debtor Pearson conceded that it lacked any equity in the Contract with the Downeys, the bankruptcy court acknowledged that the retainage was not a bankruptcy estate asset; that Pearson's creditors would not share in any part of the retainage; and thus divested itself of subject matter jurisdiction. The language of the agreed entry does not support such a conclusion.[5] While the agreed entry granted the Downeys' relief from the automatic stay and allowed them to proceed with their right

of setoff, it also authorized payment to the bankruptcy court of any funds that might be found to be due the debtor after the setoff, to be distributed as determined by the Court *without prejudice to and reserving the rights of any PLN notice creditor.* (Agreed Entry at 4) (emphasis added). The debtor also reserved its right to contest the Downeys' claim for damage, including the amount of the setoff asserted for such claims. (Agreed Entry at ¶ 12). If the bankruptcy court had denied the Downeys' right of setoff, or found that the PLN claims had priority over the setoff rights, then the retainage would have been paid into the estate for distribution. It is possible that when the bankruptcy court addresses the issue of the validity and amount of the Downeys' setoff, the court might still determine that the Downeys' setoff was excessive or invalid in whole or in part. If so, all or part of the retainage will be paid into the Court for distribution to the bankruptcy creditors. At any rate, we find that the eventual outcome of the dispute will have an effect on the bankruptcy estate, and is thus "related to" bankruptcy. Therefore, the bankruptcy court had (and still has) jurisdiction over the action.[6] To the extent that this appeal rests on the appellants' argument that the bankruptcy court lacked subject matter jurisdiction over the declaratory judgment action, the bankruptcy court's decision is **affirmed**.

*C.  Priority of Claims—Owners Right to Setoff vis á vis PLN claimants right to recover*

■ At the heart of this appeal is a dispute over whether the Downeys have a right to set off the cost of settling mechanics' liens and of remedying deficiencies against the $120,000 retainage, and whether their right of setoff has priority over, and reduces the amounts available for payment to, PLN

---

5.  Appellants make much of the fact that, in the agreed entry, Pearson "rejected" the Contract pursuant to 11 U.S.C. § 365. Rejection under § 365 does not, as appellants seem to conclude, rescind the contract or the obligations found therein, and does not take it outside the realm of bankruptcy law. *Matter of Udell v. Standard Carpetland USA, Inc.*, 149 B.R. 908 (N.D.Ind. 1993), *rev'd on other grounds*, 18 F.3d 403 (7th Cir.1994).

6.  *See, In re Cavanaugh*, 153 B.R. 224, 227 (Bankr.N.D.Ill.1993), in which the Bankruptcy Court for the Northern District of Illinois found that it had core jurisdiction over a dispute between two creditors as to the priority of competing lien claims in property in which the bankruptcy had no equity, reasoning that the estate had an interest in the outcome of the dispute despite its lack of equity in the property.

claimants. The bankruptcy court, relying upon the Seventh Circuit's opinion in *Coplay Cement Company, Inc. v. Willis & Paul Group,* 983 F.2d 1435 (7th Cir.1993), declared that the Downeys' setoff rights had priority over PLN claims. Appellants argue that a more recent Indiana Supreme Court decision, adopting the Indiana Court Appeals' decision in *McCorry v. G. Cowser Const., Inc.,* 636 N.E.2d 1273 (Ind.App.1994)[7], is in direct conflict with *Coplay* on the issue of an owner's right to setoff vis á vis a PLN claimant's right to recover, and that the bankruptcy court should have followed the Indiana Supreme Court rather than the Seventh Circuit. After reading both opinions, and reviewing prior Indiana caselaw on this issue, we find that *Coplay* and *McCorry* are not in conflict, and that the bankruptcy court properly followed Indiana law, as discussed in *Coplay,* in granting the Downeys' summary judgment motion.

Prior to *McCorry,* Indiana courts recognized the owners right to setoff against subcontractors' PLN claims. *See, e.g., Blade Corp. v. American Drywall, Inc.,* 400 N.E.2d 1183 (Ind.App.1980) ("In determining what was owed by [the owner] to the builder and thus to [the subcontractors] under Ind.Code 32–8–3–9, [the subcontractor] stands in the shoes of the builder, and [the subcontractor's] rights are not superior to those of the builder. [The owner] had a right of set-off against the builder as to any monies owed [the owner] by the builder as a result of the builder's breach."); *Pioneer Lumber & Supply v. First–Merchants Nat. Bank of Michigan City,* 169 Ind.App. 406, 349 N.E.2d 219, 223–24 (1976); *Angell Enterprises v. Abram & Hawkins,* 643 N.E.2d 362, 365 (Ind.App. 1994); *Templeton v. Sam Klain & Son, Inc.,* 425 N.E.2d 89, 94 (Ind.1981) (affirming trial court's award to subcontractor under mechanic's lien statute, because evidence warranted findings contrary to owner's contention that he had setoffs and damages due to contractor's failure to complete project).

In *Coplay,* the Seventh Circuit relied upon this Indiana caselaw in concluding that "[i]t is natural therefore for courts in cases under the personal-liability section of the mechanics' lien law to speak of setting off the owner's claims against the subcontractors', since the owner is liable only up to the net amount that he owes the contractor." 983 F.2d at 1440, *citing, Templeton,* 425 N.E.2d at 94; *Pioneer Lumber,* 349 N.E.2d at 223–24; *Blade,* 400 N.E.2d at 1186. In *Coplay,* subcontractors with PLN claims sued the owner of property under the PLN statute. The Court held that the owner was entitled to set off damages caused by defective performance on the contract against the amount owed to PLN claimant subcontractors. The Seventh Circuit reasoned that, according to the terms of the PLN statute, the subcontractors' right is limited to the amount that the owner owes the debtor, so that any setoff for damages that the owner had against the debtor/general contractor, also applies against the subcontractors/PLN claimants. *Id.,* at 1437–41 ("[w]hat [the owner] did not owe [the general contractor], it did not owe the subcontractors, be they as pure as the driven snow . . .").

Appellants contend that the amount "owed" the contractor for the purposes of determining the amount available for payment of PLN claims, is the amount of the full contract price not yet paid to the contractor at the time the PLN notice is served, without regard to any setoff the owner may have against the contractor. In support of this interpretation, they point to the following language in *McCorry:*

> . . . the amount "due" must be interpreted to mean the amount unpaid on the original contract, which amount remained in the hands of the owner and would have been available for payment of subcontractors had the contractor not defaulted.

636 N.E.2d at 1279, *citing, Adamson v. Shaner,* 3 Ind.App. 448, 452, 29 N.E. 944, 945 (1892) . . . .[8]

---

**7.** The Indiana Supreme Court opinion adopting the Court of Appeals *McCorry* decision is found at 644 N.E.2d 555 (Ind.1994).

**8.** In *Adamson,* the court found that, although there was evidence "tending to show that . . .

[the owner] was compelled to pay out more after that time for material and work in order to have the building completed than he would have owed had they finished the work according to contract", there was also evidence that the owner's

We disagree with appellants' interpretation of *McCorry*. Read in context, this passage from *McCorry* does not mean that the owner's setoff rights cannot reduce the amount "due" and thus available to pay PLN claimants. *McCorry* did not address the question of an owner's setoff rights; rather, the question before the court was whether the very fact of a contractor's breach, without any proof of damages or setoffs, means that no amount remains "due" on the contract for purposes of paying PLN claims. The court held that, by itself, a contractor's breach does not mean there is no amount "due". 636 N.E.2d at 1279 ("If a contractor's breach meant that no amount remained 'due' for purposes of the personal responsibility statute, the 'consequences of the contractor's absconding or going broke or otherwise defaulting' would be that no subcontractor could ever recover under that section."). *citing, Coplay*, 983 F.2d at 1437.

In reaching its decision, the *McCorry* court noted that the purpose of the PLN statute "is *to put the subcontractor on the same footing with the contractor,* and to prevent the inequity of an owner enjoying the fruits of a subcontractor's labor and materials without paying for them." *McCorry*, 636 N.E.2d at 1279. This is not in conflict with *Coplay*, in which the Seventh Circuit similarly stated that the purpose of the PLN statue was "not ... to shift the burden of the general contractor's bankruptcy from the subcontractors to the owner, but *merely to place the subcontractors in the place that the general contractor would have occupied in a lawsuit with the owner.*" *Coplay*, 983 F.2d at 1441–42; *see also, Blade*, 400 N.E.2d at 1186 ("In determining what was owed by [the owner] to the builder and thus to [the subcontractor] under Ind.Code 32–8–3–9, [the subcontractor] stands in the shoes of the builder ...").

Indiana law prior to *McCorry* recognized an owner's right to setoff against money available to pay PLN claims. The Seventh Circuit also clearly recognized such a right in *Coplay*. Appellants have presented nothing to persuade us that *McCorry*, which, notably, cites *Coplay*, is in conflict with *Coplay*, or meant to reject prior Indiana caselaw recog-

setoff expenses were not valid. 3 Ind.App. at

nizing an owner's right to setoff damages against a subcontractor's PLN claim. Therefore, we **affirm** the bankruptcy court's decision granting summary judgment in favor of the Downeys.

It is so ORDERED.

