ENCORE CONSTRUCTION CORP.,
and Encore Hotels of Columbus,
LLC, Appellants–Defendants,

v.

SC BODNER CONSTRUCTION,
INC., Appellee–Defendant,

Imperial Marble Corp. and Summit
Construction Company of Kansas,
Appellees–Plaintiffs.

No. 03A01–0105–CV–161.

Court of Appeals of Indiana.

March 28, 2002.

David E. Gray, Paul J. Wallace, Bowers Harrison LLP, Evansville, Indiana, Attorneys for Appellants.

John W. Van Laere, Colin J. Reilly, Jones Obenchain, South Bend, Indiana, Attorneys for Imperial Marble Corp., and Summit Construction Co. of Kansas, Inc.

Gregory L. Noland, Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, Indiana, Attorneys for SC Bodner Construction, Inc.

## OPINION

MATTINGLY–MAY, Judge.

Encore Construction Corp. and Encore Hotels of Columbus, L.L.C. (collectively, "Encore"), appeal judgments in favor of Imperial Marble Corp. and Summit Construction Co. of Kansas (collectively, "the subcontractors").[1] Encore raises four issues on appeal, which we consolidate and restate as:

1. Whether the trial court erred when it determined Encore terminated Bodner on the date Encore mailed its termination letter; and

2. Whether the trial court erred when it determined Encore was unjustly enriched by its retention of the benefits provided by Imperial and Summit.[2]

We affirm.

## FACTS

Encore Hotels and Bodner entered into a contract on April 11, 1997, for the construction of a hotel in Columbus. Bodner subcontracted with Imperial for materials to be used in the construction of the hotel and with Summit for the installation of the materials Imperial would provide. On February 4, 1998, Encore sent a letter to Bodner that purported to terminate Bodner's employment:

> [Encore] does now, without prejudice to any right or remedy which it may otherwise have, elect to terminate your employment and, after ten days following the date of the deposit of this notice with the U.S. Postal Service, will take posses-

---

1. In its judgment, the trial court found Encore and its contractor, S.C. Bodner Construction, Inc., jointly and severally liable to Imperial and Summit. Encore concedes on appeal that it became liable to the subcontractors "after the Contract [with Bodner] terminated and it took over the construction site." (Br. of Appellants at 9.) Bodner argues only that the contract terminated on February 4, 1998 and not ten days later as Encore asserts.

   In the action below, Bodner filed a cross-claim against Encore with its answers to the Imperial and Summit complaints. By agreement of the parties, Bodner's cross-claim against Encore was not heard at that time. Accordingly, we do not address Bodner's cross-claim, which presumably remains pending. We note, however, in light of our finding that the contract with Bodner terminated on February 4, 1998 and not ten days later, that Bodner would appear to be entitled to subrogation against Encore should the sub-contractors collect against Bodner.

2. Because we find the trial court's judgment may be affirmed on unjust enrichment grounds, we need not address Encore's alternative contention that the trial court erred when it determined Imperial could collect from Encore pursuant to Ind.Code § 32–8–3–9, the personal responsibility provision of the mechanic's lien statute.

sion of the construction site and all materials, equipment, tools, construction equipment and machinery thereon and finish the construction project by whatever means it may deem expedient.

(Appellant's App. at 133.) The letter indicated the termination was pursuant to Encore's rights under § 14.2 of article XIV of the Contract, which states in pertinent part that Encore could, "after giving the CONTRACTOR and its surety, if any, ten (10) days written notice, terminate the employment of the CONTRACTOR and take possession of the site . . . ." Id. at 76.

Imperial shipped its first installment of materials to the construction site on February 4, 1998, and Encore's project superintendent instructed Summit's superintendent to unload the materials and begin installation. Summit learned on February 6 that Bodner had been terminated, and Encore's project superintendent indicated to Summit that Encore had taken over the project. He asked Summit to remain at the site and continue to install the materials Imperial had provided.

Summit continued installing the materials through February 16, and it returned to the site on February 20 to install more materials. Imperial shipped additional materials to the site on or about February 12, 14, 17, 18, and 20. Bodner never received from Encore any payment for the materials provided by Imperial or the work completed by Summit, and neither Bodner nor Encore has paid either subcontractor.

## DISCUSSION AND DECISION

### Standard of Review

When findings of fact and conclusions of law are entered by the trial court, as occurred here, we will not set aside the judgment unless it is clearly erroneous; that is, unless we are definitely and firmly

convinced the trial court committed error. The findings must disclose a valid basis for the legal result reached in the judgment, and evidence at trial must support each of the specific findings. We defer to the trial court when such evidence conflicts. We will not reweigh the evidence nor reassess the credibility of the witnesses before the court. Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. Speed v. Old Fort Supply Co., Inc., 737 N.E.2d 1217, 1219 (Ind.Ct.App.2000), reh'g denied; McCorry v. G. Cowser Const., Inc., 636 N.E.2d 1273, 1276 (Ind.Ct.App. 1994), aff'd and adopted 644 N.E.2d 550 (Ind.1994).

### 1. Date of Contract Termination

The trial court found that the contract between Encore and Bodner was terminated as of February 4, the date Encore mailed its letter to Bodner. Encore asserts the contract was not actually terminated until February 14, ten days after the letter was mailed. Encore concedes it "became liable to the subcontractors after the Contract terminated and it took over the construction site. Encore has thus agreed that it is responsible for paying subcontractors for goods and services provided on and after February 14, 1998[.]" (Br. of Appellants at 9.)

The trial court found that Encore's letter of February 4 did not afford Bodner the ten days' notice called for in the agreement, as it stated the termination would occur "now," and Bodner was given no opportunity to cure any breach of the agreement or to notify the subcontractors of its termination. The trial court had ample evidence before it to support that

finding.[3]

We acknowledge Encore's argument that the letter could be read as terminating the contract ten days after the date of the letter, as the letter specified it was being submitted pursuant to section 14.2 of the contract. That section provides for a ten-day notice of termination, and the letter indicated Encore would take possession of the construction site after ten days had elapsed. The term "now" in the letter could therefore be read to refer to Encore's *election* to terminate the contract, and not to the termination itself that would take effect ten days later.

Still, we cannot say the trial court's finding was clearly erroneous in light of the evidence it had before it. The court heard evidence that the day after the letter was mailed, but before Bodner received it, Bodner's president Steven Bodner received a telephone call from John Dunn. Dunn was affiliated with Encore, was a signatory to the construction contract, and had hired Bodner to work on the project. Steven Bodner testified Dunn told him he was being relieved and that "at this date from here on out [Bodner] was receiving no more money to work on the project." (Tr. at 27–28.)

The court also heard testimony indicating that Encore took over the job site as of February 4, the date the letter was mailed. There was evidence that Paul Huff, who coordinated the workers at the job site for Encore, obtained a forklift so that Summit could unload some materials on February 4. Summit prepared a "mock-up" of the marble installation and Huff approved it on February 6. Shortly after the mock-up was approved Summit was told Bodner was no longer on the project. Huff and Huff's supervisor knew Summit was installing the materials supplied by Imperial from approximately February 4 through February 16. Summit was not told to stop installing the materials or to leave the construction site, and Huff told Summit he was on the job site to assure the subcontractors got paid. We decline Encore's invitation to reweigh the evidence supporting the trial court's finding that Encore terminated Bodner as of February 4.

### 2. *Unjust Enrichment*

■ The trial court correctly concluded Imperial and Summit were entitled to recovery on an unjust enrichment theory.[4] There are four criteria to evaluate whether evidence supports a judgment under a theory of unjust enrichment in a dispute between a subcontractor and a property owner. They are: 1) whether the owner impliedly requested the subcontractor to do the work; 2) whether the owner reasonably expected to pay the subcontractor, or the subcontractor reasonably expected to be paid by the owner; 3) whether there was an actual wrong perpetrated by the owner; and 4) whether the owner's conduct was so active and instrumental that the owner "stepped into the shoes" of the contractor. *McCorry*, 636 N.E.2d 1273,

---

**3.** The trial court so found in its Finding of Fact no. 23. Encore asserts, without explanation, that "[t]hat finding of fact if [sic] really a conclusion of law" *id.* at 10, and urges us to review *de novo* the effect of the language in Encore's letter.

**4.** Encore states that while "it is difficult to determine positively from the judgment, it appears the trial court may have reached the conclusion that Summit, and perhaps Imperial, was entitled to recover on theories of implied contract and unjust enrichment." (Br. of Appellants at 15.) The trial court states in its conclusion no. 30 that Encore "has been unjustly enriched by its retention of the benefits provided by Imperial and Summit; and has failed to pay any party for these benefits." (Appellant's App. at 31.)

1276. The evidence supports the trial court's findings of unjust enrichment.

 Encore offers argument only on the third criterion, asserting there was no evidence before the court to support a finding that it was guilty of actual wrongdoing. In *McCorry*, we found an "actual wrong perpetrated by the owner" when the owner had induced the subcontractors to "do work not provided for in the [owner-contractor] agreement, and has not paid for that work." *Id.* at 1277. There, two subcontractors were asked directly by the owner to perform certain work. The owner was present at the job site and saw the materials being used and labor being performed by one of the subcontractors. After the contractor breached, the owner asked the other subcontractor to complete its work and told that subcontractor the owner would pay the subcontractor the balance due it. The subcontractor completed the work, but the owner did not pay.

The trial court had before it sufficient evidence that Encore, like the contractor in *McCorry*, perpetrated an "actual wrong" when it asked Imperial and Summit to provide labor and materials for the project after the date when it terminated Bodner, and then refused to pay. The court heard evidence that Encore allowed the delivery of Imperial's materials during the period from February 4 through February 20, it made no effort to return the materials, and it allowed them to be installed after it had terminated Bodner. Encore asked Summit to remain at the site and to continue installing the materials, and it promised that Summit would be paid. We cannot characterize as clearly erroneous the trial court's determination that Encore was unjustly enriched by its retention of the benefits that Imperial and Summit provided and for which Encore did not pay.

## CONCLUSION

There was ample evidence to support the trial court's determination that Encore terminated Bodner's contract on February 4, and that it was liable for materials and labor Summit and Imperial provided after that date. Accordingly, we affirm.

SULLIVAN, J., and BARNES, J., concur.